United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 29, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30820

ANTHONY GOBERT,

Plaintiff-Appellee,

versus

LAWRENCE CALDWELL; MICHAEL HEGMANN,

Defendants-Appellants.

----------------------------

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:01-CV-538

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

A state-prison physician appeals the district court's denial of his assertion of qualified immunity from an inmate's civil rights action alleging constitutionally inadequate medical care. We are persuaded that the doctor enjoys immunity and reverse.

I

Anthony J. Gobert was formerly an inmate confined to the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. Dr. Michael Hegmann, Medical Director, and Dr. Larry Caldwell, a staff

1

physician (collectively, "Physician Appellants"), worked at the EHCC during Gobert's term of imprisonment.

On June 14, 2000, while on work release as a "hopper" on a garbage collection truck, Gobert's right leg was crushed below the knee when the truck collided with another vehicle. He underwent immediate surgery and initial recovery at St. Anne General Hospital in Raceland, Louisiana. There, Dr. Morris applied an external fixator to stabilize Gobert's injured leg and placed him on intravenous antibiotics. Dr. Morris's discharge summary indicated that Gobert should continue antibiotic treatment and wound cleansing and that he should have periodic visits with an orthopedic specialist.

On June 26, 2000, Gobert was admitted into the 24-Hour Unit at the EHCC infirmary due to the risk of infection. Caldwell, Gobert's primary physician, personally examined Gobert on three occasions during the span of two and one half months, and apparently issued orders on nine occasions. Though not named in this suit, a nurse practitioner, Joni Nickens, participated in Gobert's care, in addition to other doctors and medical staff. Gobert complained of wound related discomfort or apprehension concerning the care of his leg on five occasions.

On September 6, 2000, Gobert was released from prison, and on September 11, 2000 he sought private medical treatment. On the day of his appointment, September 18, 2000, Dr. Wilson diagnosed Gobert

2

with osteomyelitis,[1] which required multiple corrective surgeries—the first of which was performed on October 3, 2000.

On July 2, 2001, Gobert filed this 42 U.S.C. § 1983 action, alleging that Physician Appellants' failure to treat his injured and infected leg constituted a violation of his Eighth Amendment right to medical treatment for serious medical need. After denial of their motion to dismiss, the Physician Appellants moved for summary judgment and now appeal the denial of qualified immunity.[2]


II

"Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291."[3] Under the collateral order doctrine, however, a district court's "order denying qualified immunity, to the extent that it turns on an 'issue of law' is immediately appealable," as it is "distinct from the

---

[1] Osteomyelitis is an "[i]nflamation of the marrow and hard bone tissue of bone, usually caused by a bacterial infection." BLAKISTON'S GOULD MEDICAL DICTIONARY 964 (4th ed. 1979).

[2] Gobert expressly relinquished the federal claims alleged against Hegmann, pursuing only Louisiana state claims based in negligence. The district court maintained supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367. Neither party briefed immunity, premised on state law, in defense of the state claims against Hegmann. *See Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 885 (5th Cir. 2004). Thus, we do not reach claims involving Hegmann on this interlocutory appeal from a denial of qualified immunity in a § 1983 action against only Caldwell.

[3] *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999).

3

merits" of the case.[4]  A district court's decision to deny qualified immunity on a motion for summary judgment is "not appealable if [it is] based on a claim regarding the sufficiency of the evidence....  Therefore, if the district court concludes that the summary judgment record raises a genuine issue of material fact with respect to whether...qualified immunity is applicable, then that decision is not immediately appealable...."[5]

The applicable standard of review for "an interlocutory appeal asserting qualified immunity differs from the standard employed in most appeals of summary judgment rulings."[6]  This court lacks "the power to review the district court's decision that a genuine factual dispute exists."[7]  Rather, this court may consider "only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[8]  This

---

[4] *Behrens v. Pelletier*, 516 U.S. 299, 306 & 311 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 & 530 (1985)).  Generally, the collateral order doctrine applies to summary judgments that "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment."  *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-43 (1993).

[5] *Palmer*, 193 F.3d at 350-51 (citing *Naylor v. State of Louisiana, Dep't of Corrections*, 123 F.3d 855, 857 (5th Cir. 1997) (per curiam); *Petta v. Rivera*, 143 F.3d 895, 898 (5th Cir. 1998)) (internal citations omitted).

[6] *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc).

[7] *Id.*

[8] *Id.* (citing *Behrens*, 516 U.S. at 313; *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

4

court must "accept the plaintiff's version of the facts as true" and may review *de novo* only the purely legal question of whether "the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on [that] given set of facts."[9]

## III

Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.[10] In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known.[11]

Gobert asserts that Caldwell violated the Eighth Amendment's prohibition against cruel and unusual punishment by acting with deliberate indifference to Gobert's medical needs.[12] Caldwell does

---

[9] *Id*. at 347–48.

[10] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

[11] *Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).

[12] A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187

5

not contest that this right is clearly established.[13]

Caldwell argues, however, that Gobert fails to meet his burden under the first prong of the qualified immunity inquiry, for failure to demonstrate an Eighth Amendment violation.[14] Finding a violation of the Eighth Amendment's prohibition against cruel and unusual punishment also requires a twofold analysis. Gobert must first prove objective exposure to a substantial risk of serious harm.[15] Additionally, he must show that prison officials acted or failed to act with deliberate indifference to that risk.[16]

The application of the subjective prong is the primary dispute here.[17] A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take

---

(11th Cir. 1994), *abrogated on other grounds by Hope*, 536 U.S. 730.

[13] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." (internal quotation and citation omitted)); *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (quoting *Estelle*).

[14] "Once raised, a plaintiff has the burden to rebut the qualified immunity defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (internal quotation omitted).

[15] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)*, cited in Lawson v. Dallas County*, 2002 U.S. App. LEXIS 6543, 8-9 (5th Cir. 2002).

[16] *Id.*

[17] Caldwell does not contest that the nature of Gobert's wound exposed him to an increased risk of developing an infection, if he did not receive proper treatment. It is undisputed that the infection also posed a substantial health risk.

6

reasonable measures to abate it."[18] Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.[19] "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'"[20] A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[21] "Deliberate indifference 'is an extremely high standard to meet.'"[22]

IV

Caldwell contends that Gobert impermissibly relies on

---

[18] *Farmer*, 511 U.S. at 847; *see also Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994).

[19] *See Banuelos*, 41 F.3d at 235; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Hall*, 190 F.3d at 697; *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

[20] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle*, 429 U.S. at 107).

[21] *Id*. (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

[22] *Id.; see also Hernandez*, 380 F.3d at 882 ("We begin by emphasizing that our court has interpreted the test of deliberate indifference as a significantly high burden for plaintiffs to overcome.").

7

conclusory statements and speculation,[23] while unsuccessfully meeting the stringent deliberate indifference standard. Caldwell argues that the record lacks any probative evidence by which the district court could correctly conclude that Caldwell acted with deliberate indifference and that the undisputed facts—including multiple examinations and administered medications, lack of complaint, and failure to follow orders— contradict the allegations and exculpate him on the applicable standard.[24,25] And Caldwell

---

[23] *See Ragas v. Tennessee Gas Pipline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (explaining that unsubstantiated assertions are not competent summary judgment evidence sufficient to defeat a properly supported motion).

[24] "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993); *Bejaran v. Cruz*, 79 Fed. Appx. 73, 74 (5th Cir. 2003) (stating that Bejaran's admission in his complaint that the prison medical staff took x-rays of his back and...gave him "generic," "mild medications" refute his assertion of deliberate indifference to his medical needs").

Caldwell's rendition of the facts related to treatment are laid out below:

Plaintiff's leg wound was cleaned, the dressing changed, and/or the wound examined, every day of his seventy-three (73) day stay at EHCC, with only three possible exceptions. Plaintiff was seen at the EKL Orthopedic Clinic for an evaluation on 6/30/00 (four days after arriving at EHCC), for a follow up visit on 8/1/00, again on 8/23/00 (the day after he complained of re-injuring himself), and on 9/1/00 for another follow up visit (even though he had been seen at EKL Ortho a week earlier). Plaintiff received various medications every day of his stay at EHCC, including aspirin, Zoloft, Dolobid, Flexeril, Elavil, Cephalexin, and Cipro. Plaintiff's leg was x-rayed, per Dr. Caldwell's order, on the day after arriving at EHCC (6/27/00), and Dr. Caldwell subsequently ordered x-rays on at least two other occasions, 7/21/00 and 7/28/00. When plaintiff was released from EHCC on September 6, 2000, he was given a follow up appointment at EKL Ortho Clinic for 9/24/00. Further, Dr. Caldwell submitted a Recommendation for Off-site Consultation or Testing (namely, consultation and testing at the EKL Ortho clinic), and ordered that plaintiff be allowed to go to the front of the pill call line and to have tape (an otherwise contraband item) in his possession. On 8/25/00, plaintiff was provided with a wheelchair. On at least six (6) occasions (6/30/00, 7/18/00, 7/28/00, 8/2/00, 8/25/00, and 9/3/00), the medical record shows that plaintiff was either "without complaints," expressed "no complaints," had "no

8

argues Gobert has not contested the factual account of the medical observations made and treatment received at EHCC, as described in Caldwell's motion for summary judgment.  Consequently, Caldwell believes no genuine issue of material fact exists, either to preclude jurisdiction or upon which the district court could have relied to deny his assertion of qualified immunity.  We agree.

Gobert contends that the district court's decision, premised on the existence of conflicting facts, restricts our review on interlocutory appeal.  However, in his response to Caldwell's statement of undisputed facts accompanying the motion for summary judgment, Gobert failed to raise any conflicting facts but, rather, recited legal questions.  Gobert points to the district court's concern over the apparent presence of disputed facts and whether those facts were probative of mere negligence or deliberate indifference.  The district court explained its concern:

> I...think there are just too many issues of

---

complaints of pain or discomfort at present," or "no complaints [were] voiced."  On 7/9/00 plaintiff was reported as not complying with instructions to keep his leg elevated ("[Patient] [d]enies foot touching floor even as I am looking [at] same"). On another occasion, 7/15/00, plaintiff was admonished for being out of bed, and refused to return to bed until he was able to speak with "rank" (i.e., Capt. Foster). Plaintiff refused to have his vital signs taken on 7/13/00. [O]n that same day plaintiff was noted to have remarked that he "realizes [the] reason [why] nurses have been so strict [regarding plaintiff's] activity." Nevertheless, on 7/21/00, plaintiff again had to be instructed to keep his leg elevated.

[25] Regarding Gobert's alleged lack of complaint, though a factor, "failure to give advance notice is not dispositive." *Farmer*, 511 U.S. at 847.  Failure to comply with medical instructions is another factor for us to consider in evaluating deliberate indifference. *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999) (in affirming summary judgment, we noted that the plaintiff "refused to take his seizure medication on 28 occasions" and had "no complaints").

9

fact...[concerning] whether he looked at the medical records; whether he should have seen [Gobert] the amount of times he saw him; whether he was prescribing or not prescribing.... I just see too many material issues of fact dealing with what Dr. Caldwell did or didn't do at appropriate times; whether he reviewed or didn't review the medical records; whether or not other actions should have been taken; whether or not the records that were developed at the Earl K. Long Hospital were appropriately sent and filed in his record; whether he even should have taken efforts to look at those records; whether x-rays should have been done earlier and reviewed earlier...whether there was probative evidence that Dr. Caldwell did perceive the plaintiff had an infection prior to August 7, whether or not he appropriately relied on what the medical records were....

V

We turn to the question of deliberate indifference to identify and place in context the *material* facts in dispute.[26] It is Gobert who must demonstrate disputed facts relevant to the determination of Caldwell's alleged deliberate indifference, which when resolved in Gobert's favor defeat immunity.[27]

A

---

[26] *See Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001) ("We have jurisdiction for this interlocutory appeal *if* it challenges the *materiality* of factual issues, but lack jurisdiction *if* it challenges the district court's *genuineness* ruling - that *genuine issues* exist concerning *material facts*".) (emphasis in original); *see also Reyes v. City of Richmond*, 287 F.3d 346, 351 (5th Cir. 2002) (explaining a "challenge [to] the genuineness, rather than the materiality, of the factual disputes ... is not reviewable by interlocutory appeal"); *see also Lemoine v. New Horizons Ranch & Center, Inc.*, 174 F.3d 629, 634 (5th Cir. 1999) (holding that jurisdiction exists for determining if disputed facts are material).

[27] "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact...." *Michalik v. Hermann*, 422 F.3d 252, 263 (5th Cir. 2005) (citing *Bazan*, 246 F.3d at 489).

10

First, the applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk.[28] The parties contest what constitutes a health risk for purposes of an Eighth Amendment violation, Caldwell contending that knowledge of the actual infection is required while Gobert argues that awareness of the potentiality for an infection based on knowledge of the nature of the wound suffices.

Caldwell represents that he did not actually know that Gobert's leg was infected until August 7, 2000 and urges that it is his response to the risk beginning on this date that should be examined. Gobert counters, arguing that even if knowledge of an infection is required, the record evidence demonstrates that Caldwell knew of Gobert's condition prior to August 7—in direct conflict with Caldwell's testimony. Gobert's leg exhibited signs of infection, such as pus, inflammation, and swelling, prior to the proffered date—signs commonplace and routinely diagnosed.[29] Caldwell, himself, stated that knowledge of increased redness or a yellowish exudate flowing from the wound would elicit a personal

---

[28] *See Farmer*, 511 U.S. at 847. Again, Caldwell does not challenge whether an open wound with a fixator device screwed into the bone constitutes a *substantial* health risk.

[29] As we must focus on Caldwell's subjective knowledge, expert testimony cannot create a question of fact as to what Caldwell actually knew. *Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999) ("[S]ince the facts and circumstances of this case do not allow an inference that Sikes not only should have perceived the risk but also actually did perceive it, does the opinion testimony by Plaintiff's medical experts based on those same facts and circumstances provide the missing Farmer link? The answer is no."). We caution that the expert testimony is only probative of what inferences Caldwell, himself, could have made; whether he should have made the connection is irrelevant to this analysis.

11

evaluation from him, and he noted redness and swelling of the right foot and a wound dressing saturated with blood on June 26, 2000. Accordingly, Gobert argues, and the district court found, that a genuine issue of material fact exists as to Caldwell's subjective knowledge concerning the onset of Gobert's infection. Gobert submits that this question is appropriately left to the fact finder and restricts our review of the matter.

This question of fact, however, is immaterial to the first prong of the deliberate indifference analysis because we are persuaded that the open wound itself posed a substantial health risk to Gobert's health.[30] As Gobert also argues, knowledge of the health risk inherent in the type of wound establishes the requisite awareness. Gobert points to Caldwell's deposition, in which Caldwell testified that an infection, such as osteomyelitis, was a concern, particularly due to the nature of Gobert's wound. Caldwell testified, in a qualified manner, that he would want to examine such a wound every other day, depending on the nurses'

---

[30] "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a *sufficiently substantial risk of serious damage to his future health*, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843 (internal quotation omitted and emphasis added). Thus, the risk must be cognizable, but the consequences of that risk need not yet have materialized, in order to define the time to begin to determine whether the defendant disregarded the risk. *See Gates v. Cook*, 376 F.3d 323, 341 (5th Cir. 2004) (holding that an Eighth Amendment plaintiff did not have to prove that he was actually injured by exposure to raw sewage, only that such exposure posed a serious health risk). Rather, the defendant's action or inaction before the risk is realized remains relevant to the analysis of deliberate indifference. "A Remedy need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

12

reports.  We agree.  There is no question but that Caldwell was aware of a substantial risk of serious harm to Gobert from the nature of the wound itself, satisfying the requisite state of mind for the first prong of the deliberate indifference inquiry.  We proceed to the second prong of the deliberate indifference analysis in order to determine if a genuine issue of material fact yet exists.

B

Second, Gobert must demonstrate that Caldwell disregarded the substantial health risk about which he knew.[31]  This second prong proves fatal to Gobert's claim.  Caldwell's purported failure to meet the standard of care which he, himself, established, does not necessarily create a fact question pertaining to deliberate indifference.  That is, Caldwell's testimony does not define the applicable standard by which we assess his conduct; deliberate indifference exists wholly independent of an optimal standard of care.  According to the medical records, Gobert was given medical treatment for the injury throughout his imprisonment term.  Our question is whether Caldwell purposefully neglected Gobert's medical needs, specifically whether the answer to this question turns on genuine disputed issues of fact.

First, Gobert notes that Caldwell neglected to initially

---

[31]  *Farmer*, 511 U.S. at 847.

13

prescribe antibiotics, in derogation of Dr. Morris's orders,[32] despite appreciating the high risk of infection. Caldwell replies that when Gobert arrived at EHCC, he was already taking antibiotics prescribed by the physicians at St. Anne's hospital. The record is clear. Gobert took Keflex and Cephalexin, in addition to receiving topical antibiotics, from June 26, 2000 through July 3, 2000. There is no indication that Gobert's prescription for antibiotics was renewed immediately thereafter, and Gobert's wound appeared to improve. Six days later, a note in the medical record documents redness and serosanguinous drainage at the pin sites. That same day, July 9, Gobert was seen by a prescribing physician and on the same day began taking the antibiotic Ciproflaxin.[33] Caldwell did not note any discharge from the wound on the tenth when he examined Gobert and, therefore, had no reason to conclude that Gobert's wound was in need of additional medical care beyond the then current treatment.[34] These facts are uncontroverted and demonstrate that the EHCC healthcare staff responded to Gobert's medical needs.

---

[32] Considering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference. *See Stewart*, 174 F.3d at 535.

[33] The Ciproflaxin was originally prescribed by a Dr. Langston, to last ten days, and, then, Nickens, apparently with approval of Caldwell, renewed the prescription for fourteen additional days on July 16. Gobert argues that the antibiotics, administered orally, were insufficient, and that he should have received the antibiotics intravenously. However, failure to receive the most effective treatment cannot form the basis of deliberate indifference but, rather, sounds in negligence. *See Hasty v. Johnson*, 103 Fed. Appx. 816, 820 n.2 (5th Cir. 2004) (unpublished) (dismissing § 1983 claim despite accepting plaintiff's contention that he did not receive the optimal drug for his ailment).

[34] Moreover, failure to diagnose, alone, does not constitute deliberate indifference. *Johnson*, 759 F.2d at 1238.

14

Later entries in the medical record indicate that swelling and redness reappeared. Caldwell examined Gobert for the last time on July 20, 2000,[35] at which point Gobert complained of spasms, increased pain, and tenderness at the fixator sites.[36] On July 22 and 23, a nurse noted a "[small amount] of yellowish [drainage]." Gobert's regimen of antibiotics ended on July 30, 2000, and he did not receive antibiotics again until August 7, 2000. This period constitutes Gobert's strongest case against Caldwell. On August first, Gobert was seen at the Orthopedics Clinic at Earl K. Long Medical Center ("EKL"); an antibiotic regimen was not included in the plan for treatment, and the EKL scheduled Gobert for an additional follow-up visit on September 1, 2000. That same day, an EHCC nurse noted yellow exudate at the pin sites. After discharge from the 24-Hour Unit into the general population dormitory on August second, pursuant to Nickens's order,[37] Gobert went to the emergency unit on several occasions. Caldwell issued orders,

_____

[35] Continuous personal treatment by the defendant physician is not constitutionally mandated. *Stewart*, 174 F.3d at 535.

[36] Gobert contends that no notations in the medical record indicate a course of treatment in response to Gobert's condition, but Caldwell prescribed a muscle relaxant, Flexeril, and ordered an X-ray.

[37] Gobert argues that this discharge "contributed to or caused the infection" and asserts that any deflection of responsibility onto Nickens—reliance on her judgment—is misplaced because Nickens testified that Caldwell managed Gobert's care and that Nickens's decisions were subject to his authorization. Nickens testified that she discharged Gobert because EKL had noted healing of the wound, and Caldwell testified that Nickens's discharge order was, in retrospect, appropriate. Caldwell cannot be held liable for § 1983 violations under the theory of *respondiat superior* or vicarious liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978). Failure to supervise may comprise a permissible claim but is not alleged in the instant case. *Estate of Davis*, 406 F.3d at 381.

15

presumably based on his assessment of Gobert's medical chart. On the third, Gobert presented with blood oozing from the pin sites, and the examining nurse contacted Caldwell.[38] Later that same day, he returned with blood on the wound dressing. Caldwell was again notified, and he ordered that Gobert go to the head of the pill call line, receive tape, and go on bed rest. On August fourth, Gobert's wound again exhibited yellow exudate and dried blood. On August fifth, Gobert submitted an Administrative Remedy Procedure ("ARP"), in which he complained of his infected leg and not being able to obtain antibiotics.[39] On August seventh, Gobert presented with a fever for the first time, increased swelling and redness around the pin sites, and a yellowing of the wound area. Though Caldwell did not see Gobert, he was notified of Gobert's condition, and it was at this time that Caldwell says he learned of an infection; he prescribed the antibiotic Ciproflaxin.

As for the six-day period during which Gobert did not have a prescription for antibiotics, Caldwell explains that none were prescribed by the EKL physicians and that he relied on their judgment as specialists. Gobert contends that the reports do not even demonstrate that Gobert saw a specialist or a physician at

---

[38] *But cf. Stewart*, 174 F.3d at 536 (finding no deliberate indifference, in part, because physician did not read the patient's chart and was, therefore, not aware of the infection).

[39] Gobert also complains of not receiving an ordered X-ray. There is no indication that Caldwell knew, at the time, that Gobert had not received medication or other treatments that he had prescribed. *See Stewart*, 174 F.3d at 536 (stating that a physician is not deliberately indifferent for not ensuring that his orders have been followed).

16

EKL[40] and that Caldwell's deposition testimony reveals that he did not recall reading the reports from the EKL.[41] Gobert argues that Caldwell cannot rely on an opinion within poorly documented reports he purportedly did not read to excuse his lack of treatment.[42] Gobert maintains that there is a fact question regarding the precise time at which Caldwell appreciated the infection; that it bears on the claim of intentional neglect. Accepting this assertion, we are still left with the reality that no disputed fact question, when resolved in favor of Gobert, rises to the level of egregious intentional conduct required to satisfy the exacting deliberate indifference standard.[43] The record of extensive medical

---

[40] Caldwell issued orders on August 1, concerning Gobert's next appointment at the orthopedic clinic, consistent with the recommendation of the EKL, which would suggest that he read the report.

[41] No EKL physician is named in Gobert's medical chart on August first, as opposed to entries for his previous and subsequent visits.

[42] The medical record thereafter documents yellow drainage on seven occasions. On the last day, a notation reads "MD aware," and, on that same day, Dr. Caldwell issued an order to continue the Cipro regimen he had initiated on 8/7/00, though not personally examining Gobert.

[43] Gobert also argues that the treatment he received during the final twelve days of his incarceration, while the medical staff knew of his infection, constituted deliberate indifference. Gobert re-injured his leg on August 22, 2000, on which date Caldwell prescribed a regimen of Ciproflaxin through September 5, 2000. On August 23 and 25, 2000, the medical records indicate that Gobert had increased swelling, increased pain, dried blood on the bandage, two pitting edema spanning from knee to foot, and a low pulse in his foot. Nickens noted, "[r]ight leg still swollen [with] pitting edema.... Redness [at] ext[ernal] fixator site pin sites [with] yellow crusting.... Purulent drainage on bandage." On September 1, 2000, an examining nurse noted, "Patient having trouble filling Cipro[flaxin] [prescription]...erythema at [external fixator sites]...[anterior] tibial wound [with] purulence...8 weeks [with] no bone healing, what to do for wound care???" Comments in the medical record over this period do not indicate any significant improvement in healing. Gobert made his follow-up appointment at the EKL Orthopedic Clinic on September 1, 2000 where he was prescribed Cipro, continued to have his wound cleaned, and had a prescription for antibiotics until his release on September 6, 2000. No additional factual disputes over this time period bear on the question of our jurisdiction.

treatment spanning the final two and one half months of Gobert's incarceration and the lack of evidence to establish the necessary culpable intent say otherwise.  We agree that a trier of fact might find negligence in the one week lapse in antibiotic treatment and the surrounding circumstances. However, deliberate indifference to serious medical need could not be sustained and cannot as a matter of law support a finding of a violation of Gobert's constitutional right to be free of cruel and unusual punishment.[44]

REVERSED.

---

[44] We do not address the second prong of the qualified immunity analysis—whether in light of the deliberate indifference Caldwell yet acted reasonably—because we find that the record cannot support a finding of deliberate indifference.