DENNIS, Circuit Judge,
specially concurring.
I fully concur in the correct and well crafted majority opinion and write further only to emphasize certain facts and legal principles that additionally support its conclusion.
Having reviewed the record in this case, including the much-discussed videotape, I cannot conclude that the district court clearly erred in finding that Bias’s helpless, unconscious condition obviously required either immediate treatment or continuing medical attendance, that Dr. Sabater knew of and understood this condition, and that Dr. Sabater deliberately placed Bias in a situation in which she knew that he would receive no medical (or even medical technician) attention for several hours by approving his transportation, unconscious and horizontally crammed on the floor of a van not equipped for non-ambulatory patient use. The record also confirms that when Bias arrived at the Robertson unit, after several hours of unconsciously enduring his dangerously inadequate transportation conditions, he was immediately sent to a hospital emergency care facility, where he was not only immediately diagnosed as suffering from a drug overdose but also found to suffer from necrosis as a result of being cramped in the van unconscious and on his back and side for several hours. Finally, the record shows that this transport-induced injury led to Bias’s need for multiple surgeries and to the loss of his right buttocks, inter alia. Thus, my study of the record, including Bias’s compiled medical records, has confirmed my agreement that we should affirm the district court’s judgment because we cannot say that it is clearly erroneous.
To prove “deliberate indifference” Bias needed to demonstrate two elements: (1) that Dr. Sabater was subjectively aware of a substantial risk to Bias’s health, and (2) that Dr. Sabater disregai’ded that risk. See Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (holding that an “Eighth Amendment claimant” need only show “that the official acted or failed to act despite his knowledge of a substantial risk of serious harm”); see also Gobert v. Caldwell, 463 F.3d 339, 348-49 & n. 29 (5th Cir.2006). Since the first element inquires only into Dr. Sabater’s subjective knowledge of a substantial risk, Bias was able to meet the prong without supplying expert testimony. See Gobert, 463 F.3d at 348 n. 29 (“As we must focus on [the doctor’s] subjective knowledge, expert testimony cannot create a question of fact as to what [the doctor] actually knew.”). In fact, because “whether a pris *164 on official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,” Farmer, 511 U.S. at 842, 114 S.Ct. 1970, Bias satisfied this element and allowed the factfinder to infer Dr. Sabater’s subjective knowledge simply by demonstrating the obviousness of his condition and its risks. See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir.1999). Similarly, Bias need not have provided expert testimony to establish the second element of his deliberate indifference claim; he met the second prong by presenting evidence allowing the trier of the facts to infer that Dr. Sabater, by acting or failing to act, disregarded a known substantial risk. See Gobert, 463 F.3d at 349; see also Farmer, 511 U.S. at 842, 114 S.Ct. 1970.
Here Bias alleged and introduced evidence of facts sufficient to prove these elements of deliberate indifference, and the district court, acting as fact-finder, found the evidence, as discussed above, sufficient to rule in Bias’s favor.
We may not set aside a district court’s factual finding unless it is clearly erroneous, see Crawford v. Falcon Drilling Co., Inc. 131 F.3d 1120, 1124 (5th Cir.1997) (citing Fed.R.Civ.P. 52(a)), and based on my review of the record, I see no clear error here. The district court could have reasonably and correctly inferred from the record and video that Bias was in need of medical attention. The video documents twenty minutes of Bias’s completely unconscious, limp body, which could not easily have been malingering. Given that Bias had attempted suicide and had been slipping in and out of consciousness for nearly three days, at the very least, Bias’s obvious, unconscious state required monitoring, and from the conspicuousness of this condition, the district court could reasonably have inferred that Dr. Sabater subjectively appreciated as much.[1]
Further, the record shows no clear error in the district court’s determination that Dr. Sabater’s actions amounted to a denial or delay of medical care to Bias. By approving Bias’s transport in an ordinary van, Dr. Sabater terminated Bias’s access to any medical treatment or attention; despite his condition, she isolated him in a cramped space for multiple hours. It is well within reason for the district court to have concluded that such constitutes a disregard for the substantial risks to Bias’s health. This conclusion is bolstered by the fact that when Bias finally arrived at the Hendricks Medical Center and received proper treatment, he was immediately diagnosed as suffering from a drug overdose, as well as necrosis and other physical injuries he did not have when Dr. Sabater had him crammed into the van. So while Bias’s condition may not necessarily have required a doctor constantly present, his comatose state did merit attention by some *165 physician or medical technician, and Dr. Sabater’s order not only denied him such attention but also caused him further injury as a result of his three-hour transportation ordeal.
Thus, I concur in finding that we should affirm the district court’s judgment, and I cannot agree that expert testimony was necessary to prove this particular case. As discussed above, Farmer, 511 U.S. at 842, 114 S.Ct. 1970, and Gobert, 463 F.3d at 348 & n. 29, show that no expert testimony is needed to establish deliberate indifference in a case such as this because expert testimony cannot reveal Dr. Saba-ter’s subjective knowledge and is unnecessary to establish that Dr. Sabater’s actions amount to a disregard for Bias’s condition. Also, Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the case cited by the dissent in support of the proposition that Bias’s claim must be bolstered by expert testimony, appears to hold only that expert testimony is preferred as a general rule, and I find that Bias’s obvious and emergent condition distinguishes the present case from Estelle.[2]
In sum, I find that the district court’s judgment was not clearly erroneous. The trial judge heard testimony, watched the videotape, and made the credibility evaluations. The record shows that this determination was not clearly erroneous, so we are bound to affirm.

. Dr. Sabater never testified at trial that she believed Bias to be "faking," but the record contains statements from prison officials involved in Bias’s preparation for transport that report Dr. Sabater's making such "faking” accusations. See ROA vol. 2 p. 285; vol 6 p. 9; vol 6 p. 72-74. In light of the video, though, such a "faking” diagnosis is highly implausible. Thus, record evidence would allow the district court to discredit any assertion that Bias was merely faking and to conclude that Bias's obviously serious condition was known to Dr. Sabater.
Moreover, further record evidence also supports the conclusion that the seriousness of Bias’s condition was obvious; for example, each doctor to examine Bias after his multiple-hour transport noted the seriousness of his condition. See, e.g., ROA vol. 2 p. 289-90; ROA vol. 1 p. 178-79. In fact, Dr. Jackson, who examined Bias after he was rushed from the Robertson unit to Hendrick Medical Center, observed that he suspected, correctly, that Bias had been hoarding medications and that his condition was caused by an overdose. See ROA vol. 2 p. 289-90.

. In Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the plaintiff complained of “lack of diagnosis and inadequate treatment of his back injury,” specifically contending that his doctors should have x-rayed his back. Id. Though the plaintiff’s medical condition in Estelle may have been quite painful, id. at 99-100, 97 S.Ct. 285, it was not emergent or life threatening, and the Plaintiff received continuous treatment over a three-month period. Id. at 107, 97 S.Ct. 285.
Unlike that case, Bias's comatose or near-comatose condition obviously evidenced a need for immediate attention or monitoring, but Dr. Sabater's orders isolated him from any such attention for a critical period of hours. In fact, had Dr. Sabater's orders been followed exactly, Bias would have been without medical attention for even longer. Dr. Sabater ordered and approved Bias’s transport from the Allred Unit, near Wichita Falls, Texas, to the Montford Unit, near Lubbock, Texas; the distance between these two locations is roughly 200 miles. Bias was actually transported only roughly 150 miles from the Allred Unit to the Robertson Unit in Abilene, Texas.