IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2009

Charles R. Fulbruge III
Clerk

No. 07-31189

SUZANNE BENNETT, Individually and as Representative of the Estate of
real party in interest Sharon Russell, real party in interest Ariane Ray, real
party in interest Paris Ray, real party in interest Tia Ray,

                              Plaintiff - Appellant

v.

THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS; WARDEN JOHNNIE JONES; UNKNOWN
CHRISTMAS, Sergeant; UNKNOWN JOHNSON, Sergeant; UNKNOWN
SPURLOCK, Nurse; MICHAEL HEGMANN, Dr.; ABC INSURANCE
COMPANY

                              Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:06-CV-195

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This case involves a § 1983 suit by Suzanne Bennett, individually and as
representative of the estate of Sharon Russell, Ariane Ray, Paris Ray, and Tia
Ray (jointly "Bennett"). Russell began serving a six-year sentence for a non-

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

violent offense at the Louisiana Correctional Institute for Women ("LCIW") on December 14, 2004. Russell made repeated requests for medical care after entering LCIW, which Bennett asserts were not properly addressed. Russell died in prison custody approximately five months later at age thirty-seven. Bennett sued the State of Louisiana through the Department of Public Safety and Corrections, Warden Johnnie Jones, Sgt. Christmas, Sgt. Johnson, Nurse Spurlock, Dr. Michael Hegman, and ABC insurance Company (jointly "Appellees") for compensatory and punitive damages as well as declaratory and injunctive relief, alleging they acted with deliberate indifference to Russell's serious medical needs during her five months at LCIW, subjecting her to cruel and unusual punishment in violation of the Eighth Amendment. The Appellees brought a motion for summary judgment, which the district court granted. For reasons discussed below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Russell was sentenced to serve six years for a non-violent criminal offense. On December 14, 2004, Russell was incarcerated in the LCIW, and initial intake lab work was performed on her. According to Bennett's medical expert, it is customary in Louisiana to perform initial intake lab work for any inmate admitted to a correctional institute when a history of medical problems is apparent and known to the correctional facility. Russell's blood work evidenced that her hemoglobin, hematocrit, mean corpuscular volume (MCV), and mean corpuscular hemoglobin (MCH) were all at the "low end" of a normal range. In addition, Russell's urine analysis tested positive for white blood cells, red blood cells, an occult blood 3+, protein 3+, and a trace of Ketones. A normal urine analysis test result would indicate negative for these tests.

On December 17, 2004, a psychological screen was conducted on Russell. On December 21, 2004, a physical examination was conducted by Dr. Nowakowski, and Russell was released to the LCIW compound on a diabetic diet

with instructions to lift nothing greater than twenty-five pounds. On December 30, 2004, Russell completed a request for medical treatment form and complained of back pain, leg pain, asthma, and bronchitis. On January 13, 2005, Russell refused to accept a prescription of Remeron, a medication used to treat depression. On January 18, 2005, Russell completed another request for medical treatment form, and complained of leg pain, hip pain, and asthma. The record indicates that Russell failed to appear for her scheduled appointment on the same day.

On January 28, 2005, Russell sent a letter to her sister, Bennett, stating that the LCIW would not allow her to see a doctor because she did not have a life threatening condition. On January 31, 2005, Russell sent a letter to another relative stating that she feared for her life and requested help to get transferred from LCIW to another facility.

On February 3, 2005, Russell complained of leg, hip, right hand, and right breast pain. She was placed on the Medical Doctor ("M.D.") List, so that she could be seen by a doctor. On February 17, 2005, she again complained of these pains, as well as an inability to hold food down. On February 24, 2005, Russell was examined by Nurse Practitioner P. Ross. She complained of shortness of breath, asthma, and constipation. Russell was diagnosed with pain in her back and left leg, left posterior cervical node enlargement, and chronic constipation. An order was written to take Russell's blood pressure three times per week, and her prescriptions for Flexeril and Naproxen were continued. Magnesium Citrate was ordered in addition to the administration of Metamucil to treat Russell's constipation. She was also referred to Dr. Nowakowski. Russell failed to report for her blood pressure check on March 4, 2005.

On March 7, 2005, Russell complained of vomiting, irregular breathing, and a headache. She was referred to Dr. Nowakowski for additional treatment, who diagnosed her with flu-like symptoms. Ms. Russell was placed on bed

rest/no duty and given Phenergan for nausea and Tylenol. On March 14, 2005, Russell advised that she still was not feeling well, and reported a dry cough, body aches, and cold and hot flashes. She was currently taking Bactrim and Tylenol. A complete blood count ("CBC") was scheduled for March 15, 2005, and Russell was to follow up with Dr. Nowakowski.

On March 17, 2005, the nursing staff at the infirmary at LCIW conducted laboratory tests which showed drops in Russell's hemoglobin and hematocrit levels since her admission to LCIW on December 14, 2004. The levels were below normal, and included below normal red blood count, MCV level, MCH level, and various other results outside the "normal" range.

On March 24, 2005, Russell was diagnosed with menorrhagia and referred to an obstetrician/gynecologist for evaluation. An order was also written to check Russell's stools for blood. Dr. Nawakowski examined Russell on this date, and ordered further tests.

On March 28, 2005, Russell reported to the infirmary with complaints of continued vomiting, but after fifteen minutes of observation showed no signs of vomiting. The next day she experienced menorrhagia and a gynecologist appointment was scheduled for April 12, 2005.

On April 4, 2005, Russell complained of vomiting and reported a fall from a ladder on her bed. After examination by Nurse Practitioner Gady, she was instructed to follow-up with the infirmary if she did not improve. On April 7, 2005, Russell reported with nausea, vomiting, weight loss, and anemia. Russell was diagnosed with Gastroesophageal Reflux Disease (GERD), an ulcer, and epigastric tenderness. Russell was placed on Prilosec and Zantac for these conditions. The physician requested a referral for an esophagogastroduodenoscopy, and Russell was removed from duty for one week. The next day Russell refused medical treatment indicating that she felt "okay."

On April 14, 2005, Russell presented with complaints of nausea, weakness, and anemia. On April 15, 2005, a CBC test revealed low hemoglobin and hematocrit levels. On April 19, 2005, Russell was treated by Dr. Nowakowski who referred her to Earl K. Long Hospital ("EKL"). The initial admission notes from EKL indicated that Russell lost fifty pounds over the past four months. A doctor at EKL diagnosed Russell with pancreatitis, obstructive jaundice, anemia, and acute renal failure. On April 21st or 22nd, 2005, Russell was diagnosed with systematic inflammatory response.

Russell died at 5:00 a.m. on April 23, 2005. Her death certificate states the cause of death as peritonitis and pancreatitis.

On March 13, 2006, Bennett filed a complaint in the Middle District of Louisiana against the Appellees. The complaint alleged that when Russell was in the custody of LWIC, the Appellees, in both their individual and official capacities, showed deliberate indifference to Russell's serious medical needs and subjected Russell to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Bennett sought compensatory damages, punitive damages, and declaratory and injunctive relief. The Appellees moved for summary judgment arguing that (1) the Appellees were entitled to Eleventh Amendment immunity in their official capacities; (2) the Appellees were entitled to the protection of qualified immunity in their individual capacities; (3) the Appellees were not deliberately indifferent to a serious medical need of Russell; (4) no evidence existed that the Appellees' conduct amounted to negligence or gross negligence; and (5) no evidence causally linked Appellees' conduct to Russell's death. The district court granted the Appellees' motion for summary judgment, finding that the Appellees were entitled to Eleventh Amendment and qualified immunity. The district court concluded that Bennett failed to present any competent evidence substantiating assertions that Russell had a "serious

medical need" while at the LCIW and that the Appellees were aware of the need and intentionally failed to treat it. Bennett appeals.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo under the same standard applied by the district court. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) (citation omitted). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Terrebone Parish*, 310 F.3d at 877 (citation omitted).

## III. DISCUSSION

"'[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (citation omitted). This Court engages in a bifurcated analysis to determine if a defendant is entitled to qualified immunity. Id. First, the Court must determine whether, under current constitutional standards, the plaintiff has alleged a violation of a clearly established constitutional right. Id. If the Court determines that the plaintiff has fulfilled this standard, the Court must then determine if the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident. Id.

The constitutional right at issue in this case is Russell's Eighth Amendment right to be free from cruel and unusual punishment. The Supreme Court has interpreted the Eighth Amendment as imposing a duty on prison officials to "'ensure that inmates receive adequate . . . medical care.'" Id. at 463

(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994) (emphasis added). A prison official violates the Eighth Amendment when his/her conduct "demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Id. (citation omitted) (emphasis added). A delay of medical care can constitute an Eighth Amendment violation "only 'if there has been deliberate indifference [that] results in substantial harm'" Id. (citation omitted).

To demonstrate deliberate indifference, the plaintiff must show that the prison official was subjectively aware of the risk of serious harm to the inmate. Id. A prison official can be found liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citation omitted). If, however, the risk is obvious, the prison official's knowledge of a substantial risk of harm may be inferred. Id. (citation omitted). A disagreement with the treatment provided is not sufficient to state a claim for deliberate indifference. Id. at 464 (citation omitted). A prison inmate may also demonstrate deliberate indifference by showing that "a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Id. (citation omitted).

Bennett's argument that there was a delay in medical care as a result of deliberate indifference on the part of the Appellees fails. Specifically, she alleges that the Appellees failed to perform a second urine analysis test during the time of Russell's confinement at LWIC. The record demonstrates that Russell's original urine analysis contained multiple abnormalities. Bennett alleges that the initial abnormal reading "could indicate infection or other illnesses." The prison officials' failure to repeat the test and treat her for problems associated

with the abnormal urine analysis may demonstrate that the prison officials were aware of facts from which the inference could be drawn that there was a substantial risk of serious harm to Russell. This does not, however, demonstrate that the prison officials actually drew the inference. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. 'Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (quotation omitted) (emphasis added). While the Appellees may very well have exercised poor medical judgment in not performing additional tests on Russell, Bennett has not shown that their actions rise to the level of deliberate indifference.

The record indicates that Russell visited the infirmary at LWIC numerous times. On each visit to the infirmary Russell was examined by a medical professional who provided her with medical care. Russell was prescribed different medications to treat various illnesses and levels of pain. At times, she was excused from work duty, ordered to remain in bed, and given special dietary requirements. The evidence in the record does not demonstrate that the prison officials knew of and disregarded an "excessive risk" to Russell's health or safety.

Bennett does not present sufficient evidence to demonstrate that a prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed for Russell, and that the prison official actually drew the inference. Easter, 467 F.3d at 463. Mere negligence, neglect, medical malpractice, and unsuccessful medical treatment do not give rise to a § 1983 action. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Based on the facts in the record, the magistrate judge and the district court judge were correct in finding that the Appellees' actions did not amount to deliberate

indifference. Bennett fails to demonstrate that the Appellees violated Russell's constitutional rights under the Eighth Amendment and does not provide the Court with evidence that demonstrates a wanton disregard for Russell's "serious medical needs." The Appellees, therefore, are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.