# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-40127
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 11, 2018

Lyle W. Cayce
Clerk

CARL ELMON HUNT,

Plaintiff-Appellant

v.

SARAH PIERSON, Medical Provider; PAMELA PACE, Practice Manager, University of Texas Medical Branch; JOHN DOE, University of Texas Medical Branch Director; WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; JOHN RUPERT, Senior Warden Coffield Unit; CHRISTOPHER AMAHDRICK, Major, Texas Department of Criminal Justice-Correctional Institutions Division,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:15-CV-559

Before KING, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Carl Elmon Hunt, Texas prisoner # 832307, appeals the dismissal of his 42 U.S.C. § 1983 complaint alleging deliberate indifference to his serious medical needs in part pursuant to Federal Rule of Civil Procedure 12(b)(6) and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in part on Nurse Practitioner Sarah Pierson's motion for summary judgment. Hunt argues that the district court erred in granting Pierson summary judgment and in determining that she was entitled to qualified immunity when she took away his cane and his ground floor only housing restriction and failed to provide him with adequate medical care after his fall.

*Rule 12(b)(6) dismissal*

Hunt's brief addresses only the district court's summary judgment ruling. He has therefore waived review of the district court's Rule 12(b)(6) dismissals. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *see also Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). Hunt has moved this court for leave to file multiple, albeit untimely, reply briefs that exceed the page limit in response to the briefs filed by the appellees, as well as exhibits in support of his motion. The leave requested is GRANTED in the interest of justice. However, Hunt's attempt to address the Rule 12(b)(6) dismissals in his reply briefs is unavailing because issues raised for the first time in a reply brief are also waived. *See Warren v. Chesapeake Exploration, L.L.C.*, 759 F.3d 413, 420 (5th Cir. 2014).

*Summary judgment dismissal*

This court reviews a district court's ruling on summary judgment de novo, employing the same standard used by the district court. *McFaul v. Venezuela*, 684 F.3d 564, 571 (5th Cir. 2012). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citations omitted). "[A] party cannot defeat summary judgment with conclusory allegations,

unsubstantiated assertions, or only a scintilla of evidence." *Id.* (internal quotation marks and citation omitted).  A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).

*Deliberate indifference*

As an inmate, Hunt had a clearly established Eighth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs.  *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).  Prison officials violate the constitutional prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, resulting in unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  A prison official acts with deliberate indifference only if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial-of-medical-care claim).  "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  The plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (internal quotation marks and citation omitted).

Neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived but did not is sufficient to establish deliberate indifference.  *See id.*  Similarly, unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; "nor does a prisoner's disagreement with his medical treatment, absent

exceptional circumstances." *Gobert*, 463 F.3d at 346; *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Removal of the cane*

Hunt argues that because Pierson had treated him in the past, she knew or should have known that he had been declared 70% disabled by the Veterans Administration; and she was aware, or reasonably should have been aware, that he suffered from schizophrenia, hepatitis, high blood pressure, and a heat-related illness, all of which required him to take medications that caused drowsiness and dizziness, thereby necessitating the use of a cane. Hunt contends that, given this knowledge, Pierson's removing his cane after observing him for mere seconds while he draped his cane on his wrist while obtaining water from the water cooler at the nurses' station constituted deliberate indifference given that she unreasonably took action without assessing his physical condition or reviewing his medical records. Moreover, Hunt alleges that Dr. Thompson's medical order provided that he be permanently prescribed a cane and ground floor only housing restriction and, despite her imputed knowledge of Dr. Thompson's order, Pierson interfered by removing his cane.

*Analysis*

The summary judgment evidence, viewed in the light most favorable to Hunt, demonstrates that no genuine issue of fact exists regarding Pierson's alleged deliberate indifference. The summary judgment evidence established that on November 12, 2013, Pierson observed Hunt walk into the clinic with his cane hooked over his arm, with the end of the cane eight inches off of the floor. She observed Hunt ambulating without the assistance of his cane around the nurses' station with no limping or bobbing, and she therefore removed his cane pass.

No. 17-40127

Hunt saw Pierson two days later and sought to have his cane returned. He advised that he had not been dizzy since he discontinued Lasix. Hunt stated that he needed the cane for the degenerative disc disease in his back; however, Pierson observed that he had walked in and out of the clinic several times that day with no problems and no assistance. She therefore refused to return the cane but prescribed him Meloxicam for the pain and swelling in his left knee.

On November 19, 2013, Hunt reported that he had fallen. Nurse Broadus attended the scene, confirmed that he did not hit his head, and noted no dizziness. No injuries or bleeding were noted. Broadus contacted Pierson, who ordered that Hunt be moved to a low housing row. Hunt was seen on November 28, 2013, by Nurse Polk. Her examination revealed joint stiffness, full range of motion in his upper and lower extremities, and full flexion of neck and back, and also showed that his movement, gate, and posture were normal. Hunt requested to be examined by another medical provider, specifically Dr. Thompson, because he needed a cane.

On December 4, 2013, Hunt saw Physician Assistant Copeland for evaluation for a cane. Copeland noted that Hunt had a normal gait and was able to transfer to the examination table with ease, and Copeland noted no interim changes since Hunt's mid-November examination. Copeland therefore determined that a cane was not medically indicated at that time. Hunt made no complaints to Copeland regarding injuries he allegedly sustained in his fall.

Pierson saw Hunt again on March 4, 2014, for complaints that he wanted his cane back, he had back and knee pain, and he wanted to change his blood pressure medication. Pierson observed that he ambulated into the office with a "shuffling awkward gait" and with no assistance. Her examination revealed that his left leg was approximately a half-inch shorter than the right, that he

had hip pain, and that he had limited flexion of the spine.  His blood pressure medication was modified, and Pierson issued him a cane pass for 12 months.

Hunt's argument that Pierson's actions in removing his cane were unreasonable because she knew or should have known certain facts about his medical condition and the orders of other providers contained in the medical records sounds in negligence and not deliberate indifference; an official acts with deliberate indifference when he "*knows* of and disregards an excessive risk" to inmate safety.  *Farmer*, 511 U.S. at 837 (emphasis added).  The official's conduct must be more than unreasonable, it must be "intentional[]" and "evince a wanton disregard" for the inmate's health and safety.  *Domino*, 239 F.3d at 756.

Hunt has adduced no summary judgment evidence establishing that Pierson had actual knowledge that Dr. Thompson had issued him a permanent cane pass in July 2013.  At best, a case for medical malpractice or negligence could be made against Pierson to the extent that, as one of his providers, she was charged with the knowledge of the contents of his medical records; however, such acts do not constitute deliberate indifference.  *See Gobert*, 463 F.3d at 346.  Pierson based her decision to remove his cane on her observations that Hunt was not using the cane as an assistive device, and the above medical evidence establishes that, in addition to Pierson, Physician Assistant Copeland also determined that Hunt did not need a cane.  In this regard, the summary judgment evidence supports the district court's finding that the crux of Hunt's case is a disagreement over the type of medical care he received, which does not raise a cognizable § 1983 claim.  *See id.*

*Removal of ground floor only restriction*

Hunt contends that the removal of his cane triggered his housing reclassification, which allowed security to move him up to "two-row," which necessitated that he climb stairs.  He argues that it can only be inferred from

the removal of his cane that Pierson wanted to make him walk up and down flights of stairs as a punitive measure because she understood the toll it would take on his body.

*Analysis*

Hunt is correct that Dr. Thompson's July 25, 2013 physical examination resulted in orders that a "bottom row" restriction be added and to continue his cane permit permanently. On Hunt's Health Summary for Classification Form dated July 25, 2013, however, Dr. Thompson checked "No Restriction" for both Housing Assignment and Row Assignment, the latter of which provides for a "Ground Floor Only" restriction. Roughly three months later, on October 9, 2013, Hunt was seen by Pierson for a sick call examination. Hunt reportedly "[w]ant[ed] to have a bottom row restriction, stat[ing] he has had this in the past and he fe[lt] like he need[ed] to have one now." Pierson observed that Hunt had elevated blood pressure, complained of knee and back pain, and used a cane for ambulation. She further observed no new injuries and no current swelling in the knees, and despite his having degenerative changes on account of old injuries, Pierson did not observe any new changes warranting "one row restriction" or "bottom bunk."

Hunt and Pierson therefore knew one month before his cane was removed in November 2013 that he did *not* have a ground floor only restriction. Indeed, the summary judgment evidence establishes his last ground floor only restriction was imposed on August 4, 2011. His Health Summary for Classification Forms issued thereafter dated July 26, 2012 and August 1, 2012, did not impose a ground floor only restriction.

Consequently, the summary judgment evidence supports the district court's finding that Hunt did not have a ground floor only restriction in place when Pierson removed his cane. Hunt's allegation that Pierson changed the ground floor only restriction is conclusional and insufficient to counter the

summary judgment evidence because it is unsupported. "[C]onclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183 187 (5th Cir. 2011).

*Denial of medical treatment after the fall*

Hunt additionally argues that he was denied adequate medical treatment following his fall and that it was not until the filing of the instant law suit that the providers on the Coffield Unit considered his injuries but nevertheless failed to follow proper protocol to secure the assistance of a medical expert. He cites no authority as to the appropriate protocol. He alleges that he still suffers in severe pain because he was denied access to qualified medical personnel and faults Pierson for failing to refer him to a medical specialist.

The aforementioned medical evidence establishes that Hunt did receive treatment after his fall and he was determined to have suffered no injuries. Again, the crux of his argument is a disagreement with the type of medical treatment provided, which, as earlier discussed, is not a cognizable civil rights claim. *See Gobert*, 463 F.3d at 346. Moreover, his allegations regarding the failure to follow proper protocol are conclusional and thus not summary judgment evidence. *See Carnaby*, 636 F.3d at187

*Qualified immunity*

A qualified immunity defense alters the typical summary judgment burden of proof in that once the defense is pleaded by an official, the burden shifts to the plaintiff to rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established federal law. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). It is the plaintiff's burden to negate qualified immunity; however, all inferences are drawn in his favor. *Id.* The defense of qualified immunity has

No. 17-40127

two prongs: (1) whether an official's conduct violated a plaintiff's constitutional right and (2) whether that right was clearly established at the time of the violation. *Id.* A court may rely on either prong in its analysis. *Id.*

Hunt argues that Pierson is not entitled to qualified immunity because his right to adequate medical care was clearly established in November 2013. He contends that the question before this court is whether a reasonable person in her position would have known that her conduct violated this clearly established right. Hunt argues that a fall should reasonably have been anticipated as inevitable after his cane was removed and he was assigned second row housing.

The first prong of the qualified immunity analysis is whether an official's conduct violated a plaintiff's constitutional rights. *Brown*, 623 F.3d at 253. As discussed above, the summary judgment evidence does not present a genuine issue of material fact that would support a claim of deliberate indifference; therefore, there has been no showing that Hunt's constitutional rights were violated, and Pierson is entitled to qualified immunity. *Id.*

AFFIRMED; MOTIONS TO FILE REPLY BRIEFS OUT OF TIME, TO FILE MULTIPLE REPLY BRIEFS, TO FILE TWO OF THE REPLY BRIEFS IN EXCESS PAGES, TO FILE EXHIBITS IN SUPPORT OF THE MOTION GRANTED.