# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30215

JOHN THOMAS,

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2014

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

BESSIE CARTER, RN, CCN/M; DENNIS LARAVIA, Doctor; CASEY MCVEA, Doctor (Resident Doctor - RCC); ROBERT TANNER, Warden,

Defendants - Appellants

Appeal from the United States District Court for the
Eastern District of Louisiana
U.S.D.C. No. 2:13-CV-39

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff John Thomas, a Louisiana state prisoner at Rayburn Correctional Facility ("Rayburn"), filed suit under 42 U.S.C. § 1983 against Nurse Bessie Carter, Dr. Dennis LaRavia, and Dr. Casey McVea (collectively, the "Medical Defendants"), as well as Warden Robert Tanner, in their individual capacities alleging that they acted with deliberate indifference to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30215

his degenerative hip disease in violation of the Eighth Amendment. We REVERSE the district court's denial of the Medical Defendants' motion for summary judgment on qualified immunity grounds and RENDER judgment in their favor, DISMISS the appeal of its dismissal without prejudice of Thomas's claim against Warden Tanner, and REMAND for further proceedings as needed.

## I. Factual Background

Thomas was diagnosed with degenerative hip disease prior to his incarceration. Upon conviction, Thomas was briefly housed at Elayn Hunt Correctional Center ("Hunt"), where doctors imposed a duty status restricting Thomas to standing for no more than ten minutes. Thomas was then moved to C. Paul Phelps Correctional Center, where he was confined to "dorm duty," but without his previous restrictions. Although he received treatment for his condition, Thomas endured severe pain.

Thomas arrived at Rayburn on August 1, 2011, and was examined by Dr. LaRavia, who restricted Thomas from engaging in sports and recreational activities. Two days later, Thomas made a sick call complaining of hip pain. He also asked Nurse Carter to reimpose his duty status from Hunt, which restricted him to no more than ten minutes of standing.

Dr. LaRavia reexamined Thomas on August 8, 2011. X-rays were taken of Thomas's hip, and he was issued tennis shoes, a cane, and prescription strength ibuprofen. He was also assigned the bottom bunk of his bed and restricted from "prolonged" standing or walking and lifting more than ten pounds. On the same day, Nurse Carter addressed Thomas's request, instructing him to pursue medical issues through "proper sick call procedures" and observing that Thomas had just attended an appointment with Dr. LaRavia.

No. 14-30215

In mid-October, Dr. LaRavia examined Thomas again and recommended Thomas consult with an orthopedist to determine whether he was a candidate for hip replacement surgery. Thomas's duty status was also amended to temporarily prohibit bending, squatting, stooping, and lifting.

Thomas received an MRI in early November which revealed "severe degenerative changes" at the hip. A few days later, an orthopedist examined Thomas via Tele Medicine and recommended an in-person orthopedic consultation.

On January 20, 2012, Thomas wrote Nurse Carter that his MRI revealed a need for surgery, that his medication was ineffective, and that he was in pain from being forced to walk or stand. He also expressed concern that Dr. LaRavia's impending departure from Rayburn would delay his treatment. Nurse Carter informed Thomas that an orthopedic appointment had been requested on his behalf but that no confirmed appointment had been received. She also noted that complaints about medication should be made through sick call procedures because she was unable to prescribe medication.

Thomas received his in-person orthopedic consultation on March 2, 2012. The consulting physician determined that surgical intervention was not possible at that time, but recommended Thomas schedule a follow-up appointment for six-months from then. Dr. McVea, who had by this time replaced Dr. LaRavia as Thomas's physician, issued Thomas a walker and new pain medication.

Dr. McVea examined Thomas again on July 30, 2012. When Thomas noted that he was experiencing increasing levels of pain, Dr. McVea responded: "[Y]ou have an orthopedic follow-up soon. I agree that you need hip surgery, but its[sic] not my decision to make. It's the LSU doctor's. Do you feel like you would like to try a wheelchair?  your[sic] current meds aren't providing enough

No. 14-30215

relief?" Dr. McVea also jotted down a note reminding himself to "Request . . . ortho apt—as prev. requested."

At another sick call evaluation on September 24, Thomas inquired about the status of his follow-up appointment with the orthopedist. Dr. McVea referred Thomas for an off-site consultation on October 11, but Thomas's next consultation was via Tele Medicine. When Thomas asked why he had not been examined in-person, Nurse Carter responded that an appointment had been requested.

Thomas filed suit alleging that the foregoing interactions amounted to deliberate indifference to his hip disease. A magistrate judge conducted a *Spears* hearing and ordered a Rule 35 medical examination. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); FED. R. CIV. P. 35. The examination resolved that a hip replacement was "not medically necessary, as the condition is not life threatening, but it would improve his quality of life. Unfortunately, due to the current state budget cuts and limited operating room availability, the ability to perform elective surgery at University Hospital . . . especially a hip replacement, is very limited."

The Defendants filed for summary judgment on qualified immunity grounds. The district court denied Nurse Carter's, Dr. LaRavia's, and Dr. McVea's motions for summary judgment with the exception of one claim against Nurse Carter, which the court concluded Thomas could not substantiate. Each of these defendants appeals the denial of summary judgment. The district court also dismissed Thomas's claim against Warden Tanner *without prejudice*, but Warden Tanner challenges the dismissal of this claim, arguing it should have been dismissed *with prejudice*.

## II. Discussion

Although we traditionally lack jurisdiction to consider the denial of summary judgment on interlocutory appeal, the collateral order doctrine

permits review of the district court's denial of qualified immunity if the appeal is grounded in questions of law. *Gobert v. Caldwell*, 463 F.3d 339, 344–45 (5th Cir. 2006). However, the court does not have jurisdiction if the appeal is "based on a claim regarding the sufficiency of the evidence." *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (citation and internal quotation marks omitted). While we "must accept the plaintiff's version of the facts as true [we] review *de novo* only the purely legal question of whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on that given set of facts." *Gobert*, 463 F.3d at 345 (citation, alteration, and internal quotation marks omitted).

The test for qualified immunity is well established: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). Thomas has the burden of rebutting the Medical Defendants' qualified immunity defense, and the Medical Defendants prevail if Thomas fails to satisfy either prong. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting the lower courts permission to evaluate either prong of the qualified immunity analysis first).

A. Whether Thomas has Alleged a Violation of his Clearly Established Rights

The Eighth Amendment proscribes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he is aware of facts from which an inference can be drawn that a substantial risk of serious harm exists, and he also draws the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To substantiate his claim, Thomas must show that "prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (citation and internal quotation marks omitted).

We have previously held that non-life-threatening injuries are a serious medical need where the injuries induced severe pain. *See, e.g., id.* at 349 (an open wound posed a substantial health risk); *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999) (holding that an inmate with a broken jaw and "excruciating pain" stated a claim for relief). Given that Thomas required medication to manage his pain, rated his pain as a nine or ten on a ten point scale, and his condition warranted surgery, we have no difficulty holding that his degenerative hip condition constituted a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 ("A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."). We next examine each defendant's conduct. *See Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002).

1. Nurse Carter

Thomas alleges that Nurse Carter acted with deliberate indifference by refusing to change his duty status and by intentionally delaying his referral to an orthopedic specialist.

With respect to Thomas's first complaint, we have previously held that "disagreement with [one's] medical classification does not state a constitutional claim."[1] *Winston v. Stacks*, 243 F. App'x. 805, 807 (5th Cir. 2007)

---

[1] Thomas argues that this court lacks jurisdiction to consider this claim, as resolution of the case relies on the sufficiency of the evidence. *See Easter*, 467 F.3d at 462. The district court reasoned that Nurse Carter may have known that restrictions on "prolonged" standing, as opposed to a temporal limitation, might not prevent harm. The district court also noted that it is an open question as to whether Nurse Carter had the ability to alter Thomas's duty status.

While Thomas is correct that this court cannot review the district court's conclusion that factual disputes exist, we can review the district court's application of the law to the

(unpublished).[2] Thomas's duty status was frequently reevaluated to ensure it was consistent with his physical limitations. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls [and] examinations . . . may rebut . . . allegations of deliberate indifference."). His disagreement with his medical treatment does not amount to deliberate indifference. *See Gobert*, 463 F.3d at 346.

Thomas also argues on appeal that Nurse Carter intentionally delayed the scheduling of Thomas's follow-up appointment with an off-site physician after Dr. McVea referred Thomas to a specialist in October 2012.[3]  To demonstrate that Nurse Carter was deliberately indifferent when she failed to schedule a follow-up appointment, Thomas must present evidence that Nurse Carter intentionally refused to treat Thomas or ignored his complaints. *See Carrothers v. Kelly*, 312 F. App'x 600, 602 (5th Cir. 2009) (unpublished). While the intentional failure to schedule an appointment with a medical specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not. *See, e.g.*, *id.* at 602–03;

---

given set of facts. *Gobert*, 463 F.3d at 345. Because we hold that Thomas's disagreement with his medical classification is insufficient to maintain a claim for deliberate indifference as a matter of law, the disputes of fact ascertained by the district court do not materially affect our conclusion. Similarly, Thomas's claims against both Dr. LaRavia and Dr. McVea fail as a matter of law because neither defendant acted with the wanton disregard for Thomas's medical needs that is necessary to substantiate a deliberate indifference claim. *Id.* at 346.

[2] Although *Winston* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[3]  The parties dispute whether the district court concluded such a claim had been stated and addressed it. Defendants did not brief this claim in their initial brief, and Thomas argues the appeal is therefore waived. However, we conclude that the district court's order on this point was unclear such that the failure to brief this point initially is not a waiver. *See United States v. Miranda*, 248 F.3d 434, 443 (5th Cir. 2001) (noting that the "issues-not-briefed-are-waived rule is a prudential construct that requires the exercise of discretion"). The issue has now been fully joined, and we therefore address it on its merits.

*Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986).  Thomas points to evidence that Dr. McVea referred him for an off-site consultation, that Nurse Carter had the authority to schedule such appointments, and that one was not forthcoming.  The record reflects that on November 26, 2012, Nurse Carter wrote to Thomas noting that he had recently been evaluated in the Tele Medicine Orthopedic Clinic and states that "[t]hey made a recommendation for you to be seen in the clinic at the hospital and that has been requested."  Thomas does not provide any evidence that Nurse Carter intentionally failed to schedule an appointment or even that any delay in receiving an appointment was due to Nurse Carter's actions.  Given that the only evidence in the record suggests an off-site consultation was requested on his behalf, Thomas's conclusory allegations are insufficient to raise a dispute of fact as to whether Nurse Carter acted with "wanton disregard" for his medical needs.  *See Gobert*, 463 F.3d at 348 n.27 ("The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact. . . ." (citation and internal quotation marks omitted)).

2. Dr. LaRavia

Thomas complains that Dr. LaRavia's departure delayed both Thomas's treatment for a January 19 sick call and the scheduling of an off-site appointment with an orthopedist.

Dr. LaRavia's treatment of Thomas belies any assertion that Dr. LaRavia actively disregarded a substantial risk of harm to Thomas.  Under Dr. LaRavia's care, Thomas was issued x-rays of his hip, and received pain medication, tennis shoes, a cane, and a restrictive duty status.  *See Banuelos*, 41 F.3d at 235 (Evidence of "sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Further, a doctor must know "that his acts or omissions subjected [the plaintiff] to an excessive risk of harm." *Stewart*, 174 F.3d at 537. Thomas draws no causal connection between Dr. LaRavia's departure and any delay in treatment. Rayburn was staffed by medical professionals other than Dr. LaRavia who were ready take over Thomas's care. Thomas was screened by a nurse when he complained of back pain on January 19, his duty status was reevaluated on February 3, and he met with a specialist off-site on March 3. Moreover, Thomas himself did not appear to perceive a substantial risk of harm—when given the option, Thomas classified his sick call request of January 19 as "routine" rather than an "emergency." Accordingly, Thomas has not demonstrated that Dr. LaRavia's departure induced a substantial risk of harm, nor that Dr. LaRavia perceived such a risk.

3. Dr. McVea

Thomas maintains that Dr. McVea was deliberately indifferent by belatedly referring Thomas for a follow-up, off-site consultation. While Dr. McVea's notations show that he intended to refer Thomas to an orthopedist, Thomas alleges that Dr. McVea mistakenly referred Thomas one month late. The district court denied the Medical Defendants' motion for summary judgment, in part, because Dr. McVea had not yet asserted that his conduct was accidental, as opposed to intentional. Even reading all the facts in the light most favorable to Thomas, however, Dr. McVea's conduct does not rise to a constitutional violation.

"A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (citation and internal quotation marks omitted). Evidence of Dr. McVea's treatment of Thomas demonstrates the contrary. He

asked Thomas if he required a wheelchair, left a note reminding himself to schedule a referral for Thomas, and did in fact refer Thomas, albeit a month later.  Even assuming this conduct violated a standard of care, mere negligence is insufficient to sustain to a deliberate indifference claim.  *Id.* at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care.").  The district court's requirement that Dr. McVea avow that his conduct was unintentional misplaced the burden of proof for a deliberate indifference claim.  *Id.* (The plaintiff "must demonstrate that [the defendant] disregarded the substantial health risk about which he knew").  Accordingly, Thomas has not demonstrated that Dr. McVea "purposefully neglected [his] medical needs." *Id.*

Because the facts as alleged by Thomas do not support a conclusion that the Medical Defendants violated a clearly established right, the Medical Defendants are entitled to qualified immunity.

B. Whether the district court erred when it dismissed the claim against Warden Tanner without prejudice

The district court dismissed Thomas's claim against Warden Tanner without prejudice with leave to amend his complaint on the theory that Thomas could either plead a specific act committed by Warden Tanner, or Thomas could seek injunctive or declaratory relief against the Warden in his official capacity.  *See generally Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  On appeal, Warden Tanner initially argued that the district court erred by not dismissing the claim *with prejudice*.

This court has jurisdiction over the timely appeal of a final judgment of a district court.  28 U.S.C. § 1291.  However, a judgment is not final where, as here, the district court dismisses a case without prejudice and explicitly allows the plaintiff to amend his complaint.  *See e.g., Russell v. Watkins Ludlam*

*Winter & Stennis, P.A.*, 181 F. App'x 441, 444 (5th Cir. 2006) (unpublished). Moreover, both parties now contend that we need not reach this issue because Thomas was released from prison during the pendency of this appeal, obviating the need for injunctive or declaratory relief. Therefore, we hold that the district court's order is not appealable at this time.

In sum, Thomas has failed to show that the Medical Defendants are not entitled to a qualified immunity defense. Accordingly, we REVERSE the judgment of the district court with respect to Nurse Carter, Dr. LaRavia, and Dr. McVea and RENDER judgment in their favor, DISMISS the appeal of the district court's dismissal without prejudice with respect to Warden Tanner, and REMAND for further proceedings as needed.