REVISED

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2022

Lyle W. Cayce
Clerk

No. 20-30692

Archie Poe,

*Plaintiff—Appellant*,

*versus*

Bruce Fuller; Pamela Hearn, *in connection with her responsibility at Lincoln Parish Detention Center*; Pamela Hearn, *in connection with her responsibility at David Wade Correctional Center*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-913

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Per Curiam:*

A Louisiana inmate sued two prison doctors, alleging violations of his Eighth Amendment rights and various state law claims. We AFFIRM the district court's dismissal of his claims.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30692

## FACTUAL AND PROCEDURAL BACKGROUND

Before his incarceration, Archie Poe suffered a hip injury that warranted surgery. The surgery was to be performed in 2014 by Dr. Michael Britt. After Poe learned of complications in Dr. Britt's similar surgery on another patient, he opted to forgo the procedure. In 2016, Poe began serving a sentence imposed after his conviction in Louisiana state court. While in prison, Poe sought to have the surgery. He was first denied by Dr. Pamela Hearn at Lincoln Parish Detention Center ("LPDC"). According to Poe, she told him he should have had the surgery before coming to prison and refused to obtain his medical records to evaluate his request. Later, at David Wade Correctional Center ("DWCC"), both Dr. Hearn and Dr. Bruce Fuller also declined to order the surgery, but only after an independent evaluation suggested (1) that Poe had once more indicated that he did not want to have the surgery with Dr. Britt, and (2) that Poe could receive the surgery after prison. Eventually, he did receive the surgery. He then brought suit against Hearn and Fuller in the United States District Court for the Western District of Louisiana. He alleged violations of the Eighth Amendment and negligence under state law resulting from his medical care.

The district court granted summary judgment to both doctors only on the Eighth Amendment claims arising out of their care for Poe at DWCC. Poe settled with Dr. Hearn for his claims relating to her care for him at LPDC. Both defendants then filed for summary judgment on the state law claims. The district court *sua sponte* dismissed the remaining state law claims for lack of subject matter jurisdiction. Poe timely appealed.

## DISCUSSION

This court examines a grant of summary judgment and issues of sovereign immunity *de novo*. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 971 (5th Cir. 2021) (summary judgment); *United States*

No. 20-30692

*v. Tex. Tech Univ.*, 171 F.3d 279, 288 (5th Cir. 1999) (sovereign immunity). Poe argues on appeal that the district court erred in granting summary judgment to the defendants on his Eighth Amendment claims and dismissing his state law negligence claims.

With respect to the Eighth Amendment claims, Poe argues generally that the doctors were deliberately indifferent to his medical needs because he was in obvious pain and they did not attend to him properly. Like the district court, we identify three claims contained within his factual recitations. First is a claim that the doctors were deliberately indifferent to Poe's medical needs because he did not receive requested pain medication. Poe, though, was given an array of pain medications during his time at DWCC. While he may have wanted stronger medicines at certain points, mere "disagreement with his medical treatment" does not amount to a cognizable Eighth Amendment claim "absent exceptional circumstances." *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). We agree with the district court that the doctors were not deliberately indifferent in this circumstance.

Second, Poe seems to argue that the doctors were deliberately indifferent by failing to assign him a "no duty status" while he was at DWCC. Poe was given shifting duty statuses, though, showing at least some attention to his maladies. Moreover, we agree with other panels of this court that Eighth Amendment liability is not created simply because prison officials fail to adopt a prisoner's suggested medical classification. *Thomas v. Carter*, 593 F. App'x 338, 343 (5th Cir. 2014); *Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007).

Third, Poe contends that the two doctors were deliberately indifferent to his medical needs by failing to order the hip surgery while he was incarcerated at DWCC, ignoring his consistent complaints and obvious pain. Dr. Hearn ordered a consultation with an orthopedic group after receiving a

recommendation that Poe receive a surgical evaluation. There is no evidence that Dr. Hearn was otherwise involved in decisions relating to the decision not to order surgery. These facts do not amount to deliberate indifference. *See Gobert*, 463 F.3d at 346.

Poe also argues that Dr. Fuller was deliberately indifferent because he declined to order surgery after receiving an independent orthopedic evaluation of Poe from a physician's assistant working with Dr. Randolph Taylor. Fuller, though, merely relied on the evaluation which suggested that Poe did not want to have the surgery with the again-recommended Dr. Britt and could have the procedure when he was released from prison. Fuller's use of this report does not rise to the level of deliberate indifference. Poe's attempted reliance on two experts seemingly never accepted by the district court does not persuade us otherwise. None of our caselaw supports that Dr. Fuller was required to seek out another doctor for Poe after he had declined the recommended doctor, particularly when the notes from the orthopedist's assistant stated that Poe's surgery could wait until after he was released. *See id.* These claims were properly dismissed.

Poe further contends that the district court erred by assessing its jurisdiction and dismissing his remaining state law claims because the state of Louisiana was an indispensable party to the litigation. Under Louisiana law, Poe's claims against two doctors, arising out of what can only be characterized as allegedly negligent medical care, properly sounded in medical malpractice, not general negligence. *See Coleman v. Deno*, 2001-1517, p. 16–18 (La. 1/25/02); 813 So. 2d 303, 315–16. Consequently, his claims proceeded under the Louisiana Malpractice Liability for State Services Act ("MLSSA"), which limits recovery for medical negligence claims brought against doctors employed by the state, like doctors Hearn and Fuller were at DWCC, to judgments paid by the state. *See* La. Stat. Ann. §§ 40:1231.1–.10; 40:1237.1–.4; *see also Detillier v. Kenner Reg'l Med. Ctr.*, 2003-3259, p. 16

(La. 7/06/04); 877 So. 2d 100, 111 (explaining that judgments will only lie against the state). This is a feature of Louisiana tort law and does not displace federal procedural law. *See Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012) (applying federal procedural law but state negligence law).

We also disagree with Poe that the text of the MLSSA, specifically Subpart E, excludes prisoner malpractice claims. The MLSSA specifically discusses prisoner claims and, while they proceed under separate administrative procedures, the statute clearly countenances them as part of the same overarching scheme. *See* La. Stat. Ann. § 40:1237.1(E)(1). Prisoner medical malpractice claims do not fall outside the ambit of the MLSSA, and thus judgment on such a claim must necessarily be against the state.

We therefore agree with the district court that this substantive feature of Louisiana tort law makes "accord[ing] complete relief among existing parties" impossible, because the state is a required party to the litigation. *See* Fed. R. Civ. P. 19(a). Because Congress has not abrogated, and Louisiana has not expressly waived, sovereign immunity for MLSSA claims in *federal* court, Louisiana is not amenable to suit in a federal forum for these medical malpractice claims against its doctors. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990). Without the state as a party, Poe's recovery would be undeniably inadequate and prejudicial; moreover, his claims could be brought in Louisiana's courts. *See* Fed. R. Civ. P. 19(b). The district court thus properly dismissed the suit under Rule 19 for want of an indispensable party.

AFFIRMED.