# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2023

Lyle W. Cayce
Clerk

No. 21-40621

Christopher Irby,

*Plaintiff—Appellant*,

*versus*

Doctor Marcus Hinkle,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:19-CV-90

Before Jones, Willett, and Douglas, *Circuit Judges*.

Per Curiam:*

Christopher Irby, an inmate confined at the Darrington Unit of the Texas Department of Criminal Justice, filed a 42 U.S.C. § 1983 suit against Dr. Marcus Hinkle in which Irby alleged that Dr. Hinkle was deliberately indifferent to Irby's medical needs by initially providing inadequate treatment and then by delaying further medical treatment for facial injuries incurred after a fall from the top of a bunk bed. For the reasons provided

---

* This opinion is not designated for publication. See 5th Cir. R. 47.5.

No. 21-40621

herein, we AFFIRM the district court's grant of summary judgment to Dr. Hinkle.

## I.

Irby alleged that on November 4, 2017, he fell off the top bunk in his cell and experienced periods of unconsciousness while being transported to the infirmary. He also stated that the left side of his face was swollen, his nose was bleeding, and he was experiencing dizziness. According to Irby, Nurse Shanika Walker took his vital signs and contacted the on-call physician, Dr. Hinkle. Without examining him, Dr. Hinkle instructed the nurse to give ibuprofen to Irby and tell him to "be careful." Irby claimed that Dr. Hinkle declined Nurse Walker's request to send Irby to the emergency room.

Irby stated that he requested additional medical care during the two weeks after his fall, but the requests were denied. After purportedly submitting several I-60 forms (Inmate Requests to an Official), an appointment was made for November 16, 2017. According to the complaint, during the appointment, Dr. Hinkle observed the swelling on Irby's face but concluded that x-rays were unnecessary and instead prescribed additional ibuprofen. When Irby "pleaded" for x-rays, Dr. Hinkle relented and ordered the imaging. The x-rays were taken on November 17, 2017, but according to the complaint, Irby only received a December 7, 2017 appointment[1] to discuss the x-rays after sending two I-60 forms to the medical department, specifically to a "Dr. Spears." During that appointment, Dr. Spears informed Irby of the "damages and injuries to [Irby's] face, as reflected in the x-rays" and scheduled an appointment with an otolaryngologist (ENT).

---

[1] Irby states that the appointment was scheduled for December 7, 2017, but the medical records reflect that an appointment occurred on December 6, 2017.

No. 21-40621

At the ENT appointment, Irby learned that fractures in his face were inoperable due to the lapse in time from the fall. Irby alleged in his suit that due to the delay in medical treatment by Dr. Hinkle, the left side of his face is permanently deformed and that he continues to suffer numbness.

In response, Dr. Hinkle filed a Federal Rule of Civil Procedure 12(b) motion to dismiss Irby's § 1983 suit. First, Dr. Hinkle moved under Rule 12(b)(1) for dismissal of official capacity claims against him based upon Eleventh Amendment immunity. Second, he moved under Rule 12(b)(6) for dismissal of Irby's individual capacity claims for failure to state a claim upon which relief may be granted. The district court granted the motion in part under Rule 12(b)(1) but denied the motion in part under Rule 12(b)(6).

Subsequently, Dr. Hinkle filed a Rule 56 motion for summary judgment in which he asserted the defense of qualified immunity, contending there was no evidence of any constitutional violation. In support of that motion, he submitted various prison records. A November 4, 2017 medical note reflected that Irby fell from the top bunk and appeared to Nurse Walker complaining only of a headache and bloody nose. Nurse Walker noted that the left side of Irby's face was swollen and that his nose was bleeding. She further noted that Irby was alert, could walk and talk, and had normal vital signs. Nurse Walker relayed this information to Dr. Hinkle, who prescribed ibuprofen and cautioned Irby to "be careful."

In a November 7, 2017 Step 1 grievance form, Irby recounted his November 4, 2017 appointment and complained of persistent pain from the fall, extreme discomfort when chewing food, and continued swelling and deformity in his face. Irby stated that prison guards laughed at him when he reported the continued pain and did not provide any assistance. In the section of the form that asked for the action requested to resolve his complaint, Irby stated, "I need medical help! And a bottom bunk."

3

No. 21-40621

Irby requested further treatment from a "Dr. Spears" in a handwritten note stamped as received on November 15, 2017. Irby asserted that his cheekbone was "obviously broken" and that he continued to experience numbness and pain in his mouth and nose. Specifically, Irby asked for x-rays of his face.

In his notes from the subsequent November 16, 2017 appointment, Dr. Hinkle noted that the swelling on Irby's face had resolved, but that he continued to experience numbness. Dr. Hinkle did not believe x-rays were necessary but nevertheless ordered them. The x-rays revealed that the floor of Irby's left orbit and his left sinus wall were fractured. At a December 6, 2017 appointment, Terry Speer,[2] a nurse practitioner, explained those findings to Irby and referred him to an ENT.

Irby filed an opposition to Dr. Hinkle's motion in which he reiterated his claims of deliberate indifference and attached the notes from his December 12, 2017 ENT appointment as an exhibit. The ENT explained that "given the timing from [the] injury," the fractures were likely inoperable.

The district court found that the summary judgment evidence did not support a claim that Dr. Hinkle knew of a serious risk of medical harm to Irby and ignored that risk. It explained that the medical records did not reflect that Irby experienced periods of unconsciousness after the fall and therefore rebutted Irby's claim that this symptom alerted Dr. Hinkle of the substantial risk of serious harm. In addition, the district court found no dispute of material fact regarding Nurse Walker's alleged recommendation for Irby to

---

[2] The appellee's brief indicates that Terry Speer is the same "Dr. Spears" Irby references throughout this litigation.

go to the emergency room. It emphasized that the medical records did not include or refer to any such recommendation.

The district court therefore concluded that Irby's argument regarding his initial medical appointment amounted to a disagreement with Dr. Hinkle's treatment plan and that such a disagreement did not present a cognizable § 1983 claim. Moreover, it explained that even if the doctor's treatment plan was erroneous, claims of negligence or malpractice also are not cognizable § 1983 claims. In sum, the district court determined that "[t]he facts taken in the light most favorable to Irby do not raise a genuine issue of material fact about whether Dr. Hinkle was aware of objective facts that showed a substantial risk to Irby's health when he considered how to treat Irby on November 4" or whether the doctor "inferred that such a risk existed and deliberately disregarded it by failing to order Irby's transport to the emergency room." Because Irby did not carry his burden in negating Dr. Hinkle's qualified immunity defense, it granted Dr. Hinkle summary judgment on Irby's failure-to-treat claim.

Regarding Irby's delay-of-treatment claim, the district court noted his assertion that he had filed several formal requests for additional medical treatment but explained that Irby had not attached any I-60 forms or other formal sick call requests in his opposition to the motion for summary judgment. The district court further noted that Dr. Hinkle met with Irby one day after his November 15, 2017 handwritten request for medical care. The district court concluded that "Irby's unsupported allegations of ignored requests for treatment are insufficient to raise a genuine issue of material fact over whether a constitutional violation occurred." The district court therefore concluded that Dr. Hinkle was entitled to qualified immunity on this claim, granted Dr. Hinkle's motion for summary judgment, and dismissed Irby's § 1983 suit with prejudice. Irby timely filed a notice of appeal.

No. 21-40621

## II.

We review *de novo* a grant of summary judgment, applying the same standard as the district court. *Nickell v. Beau View of Biloxi, LLC*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is appropriate if the record discloses "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view evidence and draw all inferences in a light most favorable to the nonmovant; however, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). The pleadings and other filings of *pro se* litigants are construed liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

## III.

"To establish a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted). Qualified immunity shields government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Once the defense is properly raised, the burden shifts to the plaintiff to rebut it. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). To defeat qualified immunity at the summary judgment stage, a plaintiff must establish a genuine fact issue as to whether an official's conduct violated a constitutional right of the

6

plaintiff that was clearly established at the time of the violation. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

It is clearly established that deliberate indifference to the serious medical needs of prisoners constitutes a violation of the Eighth Amendment remediable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Prison officials violate the Eighth Amendment by demonstrating deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Estelle*, 429 U.S. at 104–06. "Deliberate indifference is an extremely high standard to meet." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, "[a]n official is not liable unless he 'knows of and disregards an excessive risk' to a plaintiff's safety." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)). This requires a plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citation omitted).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. "Delay in medical care can only constitute an Eighth Amendment violation if there has

been deliberate indifference that results in substantial harm." *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (internal quotation marks, citation, and emphasis omitted). Unsuccessful medical treatment, acts of negligence, neglect, or medical malpractice are insufficient to give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

## A.

Irby argues that the district court erred in granting Dr. Hinkle's motion for summary judgment because a dispute of material fact existed as to Irby's claim of deliberate indifference to his medical care. He asserts that Dr. Hinkle knew of the substantial risk of harm and ignored that risk and that Dr. Hinkle's initial treatment of Irby's facial injury was inadequate and did not address that risk. Furthermore, Irby contends that the record evidence supports his argument that Dr. Hinkle delayed medical care of the injury and that this delay resulted in continuing pain and facial deformity.

Irby has not demonstrated that a dispute of material fact existed regarding Dr. Hinkle's initial treatment. Irby urges that Dr. Hinkle knew of the seriousness of his facial injuries due to his bouts of unconsciousness and provided insufficient treatment by merely prescribing ibuprofen and warning him to be careful, but the medical records do not support that assertion. Nurse Walker's notes do not reflect that Irby experienced periods of unconsciousness but rather state that he was alert and able to walk and talk. Similarly, the notes do not reflect that Nurse Walker recommended to Dr. Hinkle that Irby be transported to the emergency room. Irby's challenges to Dr. Hinkle's initial prescription of ibuprofen and failure to send Irby to the emergency room amount to disagreements with his treatment plan, which are

not cognizable § 1983 claims. *See Varnado*, 920 F.2d at 321. Moreover, even if the prescription and failure to send Irby to the emergency room were erroneous medical decisions, Dr. Hinkle's acts of negligence or medical malpractice are also insufficient to give rise to claims under § 1983. *See id.* Irby contends that "[n]o doctor, after being apprised that one fell from the top bunk, resulting into noticeable injuries that entails bleeding from the nose, and the swelling of the left eye and left side of face, would recommend 'Ibuprophen' only, instead of, as a cautionary measure, medical treatment." But "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

Similarly, Irby has not demonstrated that a dispute of material fact existed regarding Dr. Hinkle's subsequent treatment. Irby states that he filed numerous formal requests for medical care that were ignored, but he did not include those forms in his opposition to Dr. Hinkle's motion for summary judgment. He further states that his family made numerous calls to the medical ombudsman on his behalf, but no affidavits indicating as much appear in the record. After Irby submitted an informal handwritten request for additional medical care, Dr. Hinkle saw him the next day. Hinkle ordered x-rays that revealed facial fractures, and the medical staff scheduled a follow-up appointment for Irby. Irby places great emphasis on the ENT's conclusion that surgical repair of the fractures was likely impossible due to the passage of time as evidence that Dr. Hinkle's delay in care resulted in serious physical injury. However, there is no evidence that Dr. Hinkle ignored requests for medical care or interfered with the scheduling of subsequent appointments. Irby indeed requested medical care in the November 7, 2017 Step 1 grievance form, but he complained that prison guards, rather than Dr. Hinkle, ignored previous requests for additional care. Irby has not demonstrated a cognizable delay-of-treatment claim because

there is no factual dispute regarding any deliberate indifference by Dr. Hinkle that resulted in substantial harm to Irby. *See Westfall*, 903 F.3d at 551. While Dr. Hinkle's course of action appears to have left much to be desired, it simply does not reach the level of deliberate indifference.

Irby relies on a Ninth Circuit case, *Jett v. Penner*, for the proposition that this court should reverse and remand as an issue of material fact exists as to whether Dr. Hinkle was deliberately indifferent to a serious medical need. 439 F.3d 1091 (9th Cir. 2006). At the outset, the court notes that despite Irby's claim to the contrary, precedent from the Ninth Circuit is not binding on this court. *Salazar v. Dretke*, 419 F.3d 384, 404 (5th Cir. 2005). Moreover, the facts of *Jett* are distinguishable from the instant matter. In *Jett*, the plaintiff fell from the top bunk in his prison cell and fractured his thumb. *Jett*, 439 F.3d at 1094. After being taken to the emergency room, he was advised in written instructions to see an orthopedic doctor within a week for a recheck. *Id*. After more than nineteen months, including numerous requests for follow-up attention, the plaintiff was finally able to see an orthopedic specialist who determined the thumb had healed incorrectly. *Id*. at 1095. In reversing the district court's grant of summary judgment to the prison physician, the Ninth Circuit noted that there was ample evidence in the plaintiff's medical file to support a finding that the physician was aware of the risk to the plaintiff. *Id*. at 1097 ("[T]here is evidence the aftercare instructions were in [plaintiff's] medical file, he sent medical slips, he filed a medical grievance . . . and he sent a letter via institutional mail to [the prison physician] describing his need to see an orthopedic doctor to set and cast his fractured right thumb."). The Ninth Circuit concluded that the plaintiff presented sufficient evidence to establish that the defendants were deliberately indifferent to his need to have his fractured thumb set and cast. *Id*. at 1096.

No. 21-40621

Here, Irby states that he filed numerous formal requests for medical care that were ignored like the plaintiff in *Jett*, but he did not include those forms in his opposition to Dr. Hinkle's motion for summary judgment. To the contrary, the records show that after Irby submitted an informal handwritten request for additional medical care, he met with Dr. Hinkle the next day and x-rays were ordered. Moreover, unlike the medical file of the plaintiff in *Jett* that included follow-up care instructions that put the prison physician on notice, nothing in Irby's medical file indicated that he was at a substantial risk of harm. To the contrary, the medical file indicates that Irby was alert, could walk and talk, and had normal vital signs.

Given the absence of a factual dispute regarding a constitutional violation, the district court did not err in concluding that Dr. Hinkle was entitled to qualified immunity and in granting Dr. Hinkle's motion for summary judgment on Irby's deliberate indifference claims.

## B.

Irby also argues that the district court erred in not allowing him to present witnesses in support of his opposition to Dr. Hinkle's motion for summary judgment. Specifically, he wished to call Nurse Walker and two officers who witnessed his fall. To the extent Irby challenges the failure of the district court to hold a hearing on Dr. Hinkle's motion, Irby had no right to a hearing. *See Johnson v. United States*, 460 F.3d 616, 619 n.2 (5th Cir. 2006); *Daniels v. Morris*, 746 F.2d 271, 274–75 (5th Cir. 1984). This court reviews for abuse of discretion the district court's decision not to hold a hearing on a motion for summary judgment. *Garza-Trevino v. New England Fin.*, 320 F. App'x 203, 206 (5th Cir. 2009); *see also Pavone v. Miss. Riverboat Amusement Corp.*, 52 F.3d 560, 568 (5th Cir. 1995) (denial of motion to continue summary judgment hearing); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994) (dismissal of a prisoner's complaint without holding a hearing).

No. 21-40621

The district court did not abuse its discretion.  Irby contends that his requested witnesses would have provided eyewitness accounts of his fall from the bunk and the events after the incident, but it is not clear whether the district court would have permitted live testimony at the summary judgment hearing and the refusal of such would not be an abuse of discretion.  More importantly, Irby was not denied the opportunity to come forward with testimonial evidence because he could have obtained affidavits from potential witnesses and submitted them with his motion.

Accordingly, the judgment of the district court is AFFIRMED.