# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2023

Lyle W. Cayce
Clerk

———————

No. 22-10126

———————

James Richard Weeks,

*Plaintiff—Appellant*,

*versus*

Bryan Collier, *Executive Director, Texas Department of Criminal Justice*; Brad Livingston, *Executive Director, Texas Department of Criminal Justice*; Lannette Linthicum, *Texas Department of Criminal Justice Health Services Division Director*; Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*; Denise DeShields, *Texas Tech University Health Sciences Center/Correctional Managed Health Care Executive Medical Director, Et al.*,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:18-CV-125

————————————————————————

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:[*]

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

No. 22-10126

James Weeks, Texas Prisoner # 1489149, filed a *pro se* complaint in 2018 against numerous Texas Department of Criminal Justice ("TDCJ") defendants under 42 U.S.C. § 1983. He alleged several constitutional violations due to the defendants' alleged deliberate indifference. Weeks now appeals the district court's dismissal of his complaint with prejudice. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In late June 2018, James Weeks filed a Section 1983 complaint in the United States District Court, Northern District of Texas, bringing claims against 110 defendants from multiple TDCJ units. Weeks alleged these defendants violated his constitutional rights in connection with the diagnosis and treatment of his colon cancer and gallstones, resulting in numerous collateral consequences. Weeks further alleged that various defendants continuously treated his medical conditions improperly despite his repeated complaints, improper treatment that he claims sunk to the level of deliberate indifference. The most serious condition was undiagnosed colon cancer, which was stage three metastatic cancer by the time of diagnosis in July 2016.

Weeks also made numerous allegations concerning the handling and outcomes of a multitude of prison grievances; acts of retaliation by prison guards; his housing unit assignments; the conditions of his confinement, including the availability and quality of food, toiletries, and commissary supplies; and the confiscation of his property. He sought compensatory damages, punitive damages, and injunctive relief.

The district court temporarily granted Weeks leave to proceed *in forma pauperis* when it granted Weeks his first leave to amend his complaint. However, because Weeks filed suit *pro se*, the district court ordered the Texas Attorney General to submit Weeks's authenticated records to allow the court to fully analyze Weeks's allegations. After reviewing these records, the court dismissed Weeks's complaint with prejudice without conducting a *Spears*

No. 22-10126

hearing. This court established *Spears* hearings to allow courts to determine whether claims by *in forma pauperis* inmates are legally frivolous. *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985).

The district court divided Weeks's allegations into three groups that totaled 21 claims: nine claims of deliberate indifference; six claims relating to the confiscation or deprivation of his private property; and six claims alleging violations of his right of access to the courts, retaliation by prison officials, and mishandling of grievances. The court determined that Weeks's deliberate indifference claims regarding his pre-cancer diagnosis and treatment were time-barred because he brought them more than two years after the discovery of his cancer in "early 2016."

The district court further concluded that Weeks's deliberate indifference claims regarding his serious post-diagnosis medical needs between December 2017 and January 2018 were frivolous because the medical records reflected Weeks received regular care during that time. As for Weeks's deprivation-of-property claims, the court found that there was an adequate state post-deprivation remedy. The court determined Weeks's remaining claims should be dismissed because they were either conclusory, without merit, or lacking constitutional magnitude. To the extent that Weeks was challenging the result of certain disciplinary convictions and punishments, the court determined the claims were barred under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Weeks timely filed a notice of appeal and moved for leave to proceed *in forma pauperis*. The district court denied Weeks's motion to proceed *in forma pauperis*, concluding that his appeal was not taken in good faith under 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a)(3). Weeks later filed in this court for leave to proceed *in forma pauperis* on appeal. We granted the motion, determining that Weeks demonstrated his financial

3

eligibility and that the appeal involved at least one non-frivolous issue: whether Weeks's claims regarding his pre-cancer diagnosis and treatment were properly dismissed as untimely. The Office of the Texas Attorney General ("OAG") then appeared as *amicus curiae*.

## DISCUSSION

A district court dismisses a Section 1983 complaint of a prisoner proceeding *in forma pauperis* as frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). Dismissals of claims brought by *in forma pauperis* prisoners are subject to two different standards of review, depending on factors that need not be discussed today. *Id.* The district court here dismissed Weeks's complaint pursuant to three separate statutes: 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), and 42 U.S.C. § 1997e(a). Because the district court referred to all three relevant statutes in its opinion, we collectively review the issues *de novo*. *Geiger*, 404 F.3d at 373.

Weeks raises 28 issues on appeal, but not all are addressed in his brief. Although *pro se* briefs are liberally construed, the litigants must sufficiently brief arguments if they wish to preserve them. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993). We only address the issues for which Weeks provided adequate legal analysis or discussion. *See Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990). All others are abandoned. *Yohey*, 985 F.2d at 224–25.

I.   *Statute of limitations.*

Weeks challenges the district court's dismissal of his pre-diagnosis deliberate indifference claims as untimely.

"A district court may raise the defense of limitations *sua sponte* in an action under [Section] 1915." *Davis v. Young*, 624 F. App'x 203, 207 (5th

Cir. 2015). "[D]ismissal is appropriate if it is clear from the face of the complaint that the claims asserted [by the prisoner] are barred by the applicable statute of limitations." *Id.* (citation omitted). There is no specified limitations period for Section 1983 actions, thus a state statute must be "borrowed." The OAG argues the applicable state statute here is the Texas health care liability statute. Under this statute, the claim must be brought within "two years from the occurrence of the breach or tort or from the date the medical or health care treatment . . . or hospitalization for which the claim is made is completed." TEX. CIV. PRAC. & REM. CODE § 74.251. The OAG argues this is the proper statute because Weeks's claims sound in negligent course of treatment or lack of treatment, and the individuals who treated him are "healthcare providers" as defined by statute.

The Supreme Court, though, has held that the proper state statute of limitations for a Section 1983 claim is the one for general personal-injury tort claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The applicable limitations period in Texas is two years from the date on which the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.003(a). We apply that statute.

The next issue is the accrual date for the claim. *Wallace*, 549 U.S. at 387–88. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Id.* at 388. Consequently, we reject the OAG's effort to convince us that Texas law applies to the date of accrual. Under federal law, an action accrues when the plaintiff becomes aware of both the existence of an injury and its cause. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by United States v. Wong*, 575 U.S. 402 (2015). This federal "discovery rule" delays the accrual period until the plaintiff knew of the injury and its cause or should have discovered the injury and its cause through reasonable diligence. *Id.*

The federal discovery rule clarifies the accrual date for a Section 1983 claim is when the plaintiff becomes aware of *both* the existence of an injury and its cause. *Id.* Weeks became aware of both his cancer and its alleged cause on July 11, 2016, at the earliest. His colonoscopy indicated a large pre-cancerous tumor, and the diagnosing doctor asked why nothing had been done about Weeks's condition despite his complaints. On July 15, 2016, the tumor was removed and determined to be Stage 3 cancer.

The facts relevant to Weeks's deliberate indifference claims resulting in or preventing earlier treatment of his colon cancer could not be known until the cancer diagnosis was made or at least suspected. Weeks had no knowledge of his cancer, nor should he have discovered it or its cause through reasonable diligence, on the date of his last interaction with the defendant health care providers. That date was March 28, 2016. The district court seemingly accepted that date when finding the claim accrued "in early 2016" for any claim. We disagree. Weeks would have no reason to know of his injury at that time, as the diagnosis of colon cancer occurred later.

We find that the earliest accrual date for Weeks's pre-diagnosis claims was July 11, 2016, the date his post-surgery biopsy showed the precancerous mass. Weeks's complaint is dated June 28, 2018, postmarked July 3, 2018, and docketed as filed on July 5, 2018. His claims are thus timely.

II. *Deliberate indifference.*

Weeks asserted two categories of deliberate indifference claims: pre-diagnosis and post-diagnosis. The district court dismissed all claims as frivolous and for failure to state a claim. We analyze each deliberate indifference claim separately.

When reviewing a dismissal for failure to state a claim, all well-pleaded facts are accepted as true and viewed "in the light most favorable to the plaintiff." *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). A plaintiff

must "state a claim to relief that is plausible on its face" and plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Threadbare recitals of causes of action and conclusory statements are insufficient. *Id.*

Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). A prison official acts with deliberate indifference "only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.*

Instead, a prisoner must provide evidence "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotation marks and citations omitted). This court defines a "serious medical need [a]s one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12. Overall, "[d]eliberate indifference is an extremely high standard to meet." *Id.* at 346 (quotation marks and citations omitted).

### a. *Pre-diagnosis.*

The district court did not reach the merits of Weeks's pre-diagnosis deliberate indifference claims, finding them untimely and frivolous. Because we disagree as to timeliness, we now need to examine their merits.

No. 22-10126

While incarcerated, Weeks complained of blood in his stool on several occasions. Following each report to medical staff, Weeks was provided a Fecal Occult Blood ("FOB") test. Under prison policy, a positive result for blood had to appear in two of three FOB tests before a colonoscopy could be ordered. Prior to March 2016, Weeks's FOB tests were negative. After two FOB tests returned positive in March 2016, Weeks received his July 11, 2016, colonoscopy. The diagnosis of colon cancer led to surgical removal of Weeks's tumor, his gallbladder, and 30 lymph nodes.

Weeks argues the manner in which his complaints were addressed constitutes deliberate indifference. Responding to serious medical needs with cursory or minimal, ineffective treatment and delay of care can amount to deliberate indifference. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Easter*, 467 F.3d at 463–64. Weeks received routine tests for blood found in stool and the policy-required colonoscopy only when two of those tests returned positive results.

Is there evidence of cursory, minimal, ineffective treatment? Weeks contends that FOB tests were not the proper procedure for his condition because those tests are for hidden blood, yet he reported visible blood in each of his complaints. There is evidence in the record that the more sensitive Fecal Immunochemical Test is preferred for cancer screening. Further, Weeks's diagnosing doctor questioned why a different procedure had not been done. Weeks argues from all this that the policy and procedure of the medical providers prescribing Fiber-Lax and performing no physical tests other than the FOB tests support deliberate indifference.

These actions must be measured against the rule that "the decision whether to provide additional treatment" and the choice between forms of treatment are "classic example[s] of a matter for medical judgment," and are not deliberate indifference. *Gobert*, 463 F.3d at 346; *Estelle v. Gamble*, 429

8

U.S. 97, 107 (1976).   Weeks provides no evidence to support the disagreement about the proper tests.  It is understandable that he believes his complaints should have caused a more in-depth examination, but a belief does not amount to deliberate indifference.  Further, there is nothing in the record indicating he had two positive FOB tests prior to March 2016, and those tests led to the proper diagnosis and surgery.

We find no support for Weeks's assertion that any member of the medical staff delayed his care or ignored his complaints.  At most, the conduct of the medical providers would rise to negligence or even gross negligence, but "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (quotation marks and citations omitted).  Weeks has failed to state a claim of deliberate indifference regarding his pre-diagnosis treatment.

### b.  *Post-diagnosis.*

Weeks alleges the defendants' following conduct establishes instances of deliberate indifference regarding his care after the diagnosis of colon cancer.  Nurse Judith Thomas ordered Weeks's post-surgical staples to be removed from his partially healed wound, replaced the staples with steri-strip, and discontinued his blood thinner.  Thomas then told Weeks that there was no order for the blood thinner medication and that another nurse told Thomas the medication had been discontinued because Weeks was "up and about."  Weeks was told in response to a grievance that after consultation with the pharmacist, there was no indication to continue the medication because Weeks was "ambulating freely."   The discontinuation of the medication allegedly caused an infection at his incision.

Weeks claims he suffered from nausea and vomiting for 48 hours after chemotherapy, and none of the nurses provided any treatment.  The enema

he was given prior to his colonoscopy was, according to Weeks, unnecessary, and he was uncomfortable throughout the preparation. Weeks alleges nurse Kelly Morrison intentionally injected more Phenergan into his thigh than he was prescribed, causing pain and bruising. Additionally, Weeks was transferred from the 12-hour medical unit to the 24-hour medical unit after completing half of his chemotherapy treatments, and he contends the medical attention in the 12-hour unit was better and faster.

These allegations do not raise a facially plausible deliberate indifference claim. A healthcare provider's failure to follow the advice of another provider, without more, supports only a difference in medical opinion, not deliberate indifference. *See Gobert*, 463 F.3d at 346; *See Estelle*, 429 U.S. at 107. Weeks states that nurse Thomas's "malice can be inferred" from her conduct and that nurse Morrison's injection was improper. Neither his disagreement with Thomas's use of steri-strips rather than staples nor his general dissatisfaction with his course of treatment from both nurses constitutes deliberate indifference "absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Weeks has not asserted any.

Instead, Weeks's complaint contains facts that nurses on duty responded to his complaints of nausea and attended to his needs during his chemotherapy. He was also routinely given anti-nausea medication and responded to treatments. Overall, the record establishes that after Weeks was diagnosed with colon cancer, he received regular care from the medical providers that coincided with their medical judgment.

Weeks has not raised a viable deliberate indifference allegation against any defendant.

III.    *Deprivation of property.*

Weeks contends officials allowed his property to be stolen while he was being treated. "Prisoners have a cognizable constitutionally protected

property interest in their personal property." *Eubanks v. McCotter*, 802 F.2d 790, 793–94 (5th Cir. 1986). Nevertheless, "[u]nder the *Parratt/Hudson* doctrine, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims like conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.—Corpus Christi 2002).

We examine Weeks's individual claims. He alleges that his identification card and shower shoes were taken and not returned to him when he returned from the hospital after certain defendants failed to follow proper inventory procedures. Although Weeks has a protected property interest in this personal property, "[a] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quotation marks and citations omitted). We previously held that a similar due process claim was properly dismissed because Texas law provides the adequate post-deprivation remedy of conversion when property is taken without proper procedures. *Id.* We find the same here. Weeks has an adequate state post-deprivation remedy under Texas law and thus does not have a Section 1983 due process claim.

As for Weeks's craft shop materials, he alleges the failure to transfer his materials was the result of negligence. The Supreme Court has held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."

11

*Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Thus, Weeks failed to sufficiently state a claim for relief under Section 1983 because, again, Texas provides an adequate post-deprivation remedy.

With respect to his craft chemicals, Weeks argues he was deprived of the chemicals pursuant to prison policy.  This claim requires a different analysis because post-deprivation remedies "do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action."  *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).  "Conduct is not 'random and unauthorized'" if the state delegates the power to the defendants "to effect the very deprivation complained of."  *Allen*, 388 F.3d at 149.

Weeks alleges in his complaint that he was advised his chemicals could not be transferred between medication units, he had 60 days to arrange for their pickup or mailing, and the chemicals would be discarded if he did not make the arrangements.  He describes no actions he took to file a grievance about this issue or the policy.  The prison officials' explanation of prison procedures Weeks needed to follow provided him with constitutional minimum protections.  His lack of action and Texas's adequate post-deprivation remedy of conversion establish that his claim was properly dismissed.

Weeks also asserts a general property interest in the prison grievance system.  He contends that the numerous grievances he filed, yet did not specifically identify in his complaint, were not properly or timely processed.  According to Weeks, this resulted in a denial of his constitutional rights.  Weeks "does not have a federally protected liberty in having [his prison] grievances resolved to his satisfaction," and any claim related to that process is not cognizable under Section 1983.  28 U.S.C. § 1983; *Geiger*, 404 F.3d at 374.  The claim has no merit.

IV.    *Right of access to the courts.*

Weeks's alleges his constitutional right to present his case was impeded by prison officials when they confiscated items from his cell. Prisoners have "a constitutionally protected right of access to the courts"; this does not extend to "more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 819, 821 (5th Cir. 1993). "An inmate alleging the denial of his right of access to the courts must demonstrate a relevant, actual injury stemming from the defendant's unconstitutional conduct." *Brewster*, 587 F.3d at 769. The inmate must "allege that his ability to pursue a 'nonfrivolous,' 'arguable' legal claim was hindered" and "describe the underlying claim well enough to show that its 'arguable nature . . . is more than hope.'" *Id.* (citations omitted).

Weeks contends his stamps and envelopes were confiscated, depriving him of "service upon a defendant via U.S. mail, causing that defendant to go unserved." Weeks does not identify the claims that were hindered as a result of the conduct, offer evidence showing that any defendant hindered his ability to pursue a nonfrivolous legal claim, or show any actual injury stemming from the defendants' conduct. Weeks has failed to state a claim for relief on this issue.

V.    *Retaliation by prison officials.*

Weeks asserts numerous acts of retaliation by defendants for his filing grievances and complaints on his and other prisoners' behalf. He argues the defendants fabricated rules in order to charge him with violations. Specifically, Weeks argues Officer McBroom wrote a disciplinary charge against him in retaliation for providing legal assistance to other prisoners, and he was subsequently charged with contraband in his cell.

Retaliation by a prison official against a prisoner who is seeking to access the courts or is complaining about misconduct violates the First Amendment. *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). Retaliation claims are "regarded with skepticism" to avoid enmeshing federal courts in prison disciplinary actions. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). To prevail on a retaliation claim, "a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quotation marks and citations omitted). A claim is only actionable if the retaliatory conduct is "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686. The action must be more than *de minimis* to form the basis of a Section 1983 claim, *id.* at 684–85, and the prisoner must show the adverse act would not have occurred but for the retaliatory motive to establish causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Weeks does not have a constitutionally protected right to meet with another prisoner and provide legal assistance or advice. *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). He therefore cannot satisfy the first element of a retaliation claim. Weeks also fails to identify any punishment resulting from his contraband charges that could be considered more than *de minimis*. Confiscation of Tylenol and soap would not deter an ordinary person from pursuing his claims. *Cf. Morris*, 449 F.3d at 686–87. Additionally, Weeks fails to provide any specific support for his claim of retaliatory conduct against Officer McBroom.

Weeks's allegations amount to no more than conclusory statements of his "personal belief that he is the victim of retaliation," which is insufficient to state a claim for relief. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

## VI.    *Punishment and prison condition.*

Weeks raises numerous complaints regarding prison life and use of restraints during transport.  He argues there are several conditions that make prison life difficult and confusing, and he alleges that use of a "black box" restraint constituted cruel and inhuman punishment.

Regarding the prison conditions, Weeks fails to identify any specific constitutional violations or injuries he suffered, and he has not alleged conditions "so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need."  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).  None of the conditions rise to the level of a constitutional violation.

Concerning restraints, the Eighth Amendment's prohibition against cruel and inhuman punishment is implicated when handcuffs or restraints are used to subject prisoners to "great pain" either "deliberately, as punishment, or mindlessly, with indifference to the prisoners' humanity." *Fulford v. King*, 692 F.2d 11, 14–15 (5th Cir. 1982).  Weeks does not contend that he suffered any injury or great pain, nor has he provided any facts showing that restraints were used as punishment or to cause him harm.  To the contrary, he states that the guards explained they were using the "black box" restraints during his transport because another prisoner attempted suicide during their previous transport.  Weeks has failed to sufficiently plead a claim for relief on either issue.

## VII.    *Entitlement to amend.*

Weeks's final argument is the district court should not have dismissed his entire complaint if amending would have cured the deficiencies.  *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).  Weeks filed a Rule 59(e) motion to be permitted to amend.  "Generally, a district court errs in dismissing a *pro se* complaint for failure to state a claim . . . without giving the

plaintiff an opportunity to amend." *Id.* The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pled his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020).

When a *pro se* litigant's complaint is dismissed without allowing an opportunity to amend, this court considers whether the plaintiff's "allegations, if developed by a questionnaire or in a *Spears* dialog, might have presented a nonfrivolous section 1983 claim." *Eason*, 14 F.3d at 9. If, "[w]ith further factual development and specificity" the plaintiff's "allegations may pass . . . muster," we generally remand to give the prisoner "an opportunity . . . to offer a more detailed set of factual claims." *Id.* at 10.

In his Rule 59(e) motion, Weeks did not specify what issues he would have raised or how he would have cured any deficiencies in his complaint. He already presented, in his initial complaint, 225 pages of allegations to support his over 100 claims against 110 individual defendants. He provided detailed facts supporting his claims and the alleged conduct of the defendants that violated his constitutional rights. Weeks already had a considerable opportunity to present his best case. Without more in his motion for leave to amend, the district court did not err in denying it.

AFFIRMED.